CLIFTON W. HIGHAM, *p. a. vs.* T. W. WATERMAN COMPANY.

JUNE 30, 1911.

PRESENT:   Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)   *Master and Servant.   Teamer and Hirer.*

Under the ordinary contract between a hirer and a teaming company, the servant sent to fulfill the teamer's contract remains the servant of the teamer in all matters pertaining to the performance of the contract, a necessary part of which is not only to carry the goods, but also to unload and deliver them. As to these matters the driver continues to be the teamer's servant unless by a special arrangement he is in some or all of these matters placed directly under the control of the hirer, or by the hirer's interference he makes the driver his servant as to the particular matter with reference to which he interferes.

(2)   *Same.*

X. a corporation engaged in the lumber business had a verbal contract with defendant which carried on a general teaming business, to furnish to it on request, teams with drivers at a certain price per hour.   Defendant furnished a team and driver, and X. directed the driver to make delivery of a load of lumber at a certain place.   The driver piled the lumber in the highway upon the edge of the sidewalk, beside the gutter in front of the lot. Within a short time after he had left it the pile fell, injuring plaintiff.

*Held,* that in the absence of any special direction as to the unloading by X., whether the driver was the servant of X. must depend upon the terms of the contract between X. and defendant.

*Held,* further, that the evidence showing the contract to be the ordinary one between a teamer and a hirer, the defendant was liable for the negligence of the driver in unloading and piling the lumber.

(3)   *Evidence.*

The foreman of X., a witness for plaintiff testified that he had no control over the driver except to tell him where to go.   In cross examination he testified that he had all control over the driver except the power to discharge him.

*Held,* that, while the determination of the question whether the driver was the servant of X. or of the defendant depended upon the terms of the contract between the defendant and X., and not upon the extent of the control which the foreman of X. had assumed to exercise over the driver, yet as his testimony in cross examination was contrary to his direct testimony, plaintiff should have been permitted to obtain an explanation of his answer, particularly with reference to its bearing on the matter of unloading the lumber.

(4)   *Obstruction in Highway.   Delivery.   Nuisance.   Negligence.*

Irrespective of the liability of a person who carelessly piles lumber in a highway for the results of his negligence which may occur after he has made a

delivery of the lumber to a third person, until the lumber *is* delivered the duty is imposed to maintain the pile in a safe condition.

`TRESPASS ON THE CASE for negligence.   Heard on exceptions of plaintiff and sustained.

SWEETLAND, J.   This is an action of the case for negligence brought by Clifton W. Higham, *p. a.* against T. W. Waterman Company, to recover for personal injuries sustained on the 17th day of June, A. D. 1909, in consequence of lumber piled upon a public highway, falling upon him.

Burrows and Kenyon, incorporated, is a corporation engaged in the lumber business in the city of Providence. Said corporation does not have teams of its own with which to deliver lumber to its customers.   It hires from various persons horses and lumber wagons, and drivers to drive the teams and attend to the delivery of lumber sold by it to its customers.   Among others it has a verbal contract with the defendant, T. W. Waterman Company, which carries on a general teaming business, to furnish to it, upon request, teams with drivers at a certain price per hour.   On June 17th 1909, upon request, the defendant under said contract furnished to Burrows and Kenyon, incorporated, a double team and driver.   Burrows and Kenyon directed said driver to make delivery of a load of hemlock boards at a place where a new house was being erected on Alverson Avenue in said Providence.   Said driver was not accompanied by any employee or agent of Burrows and Kenyon, or by any assistant.   All that the testimony clearly shows in regard to the driver's conduct in carrying out the direction to deliver said boards is that he took them from his lumber reach and piled them up in the highway, upon the edge of the sidewalk, beside the gutter, in front of the lot, where said house was being erected.   Within a short time after the driver had piled them up and left them, the boards or some portion of them fell over into the gutter and injured the plaintiff, a boy seven years old, who was picking up chips of wood there.   According to the testimony of certain of the wit-

nesses the pile of boards was not disturbed by any person from the time it was left by said driver until it fell over upon the plaintiff.

The case was tried in the Superior Court before a jury. At the close of the plaintiff's testimony, on motion of the defendant, the justice presiding nonsuited the plaintiff on the ground that said driver, in piling the load of boards upon the sidewalk in Alverson Avenue, was the servant of Burrows and Kenyon, incorporated, and that the T. W. Waterman Company was not liable for any negligence of said driver in that regard.

The case is before this court upon the plaintiff's exceptions to the rulings of the justice presiding excluding certain testimony and granting the defendant's motion for a nonsuit.

The plaintiff excepted to the ruling of the justice presiding excluding certain questions asked by the plaintiff of his witness George H. Wheat. Mr. Wheat testified that he is a foreman for Burrows and Kenyon. Just what is the scope of his duty, or the extent of his authority, does not appear. In one portion of his testimony he said, "I simply have charge of the teams and sent them over." It does not appear that this witness took any part in making the contract for hiring teams and drivers from the defendant or that he knew what were the terms of said contract or the exact relations existing between Burrows and Kenyon and the driver sent with the team. This witness testified, however, a number of times, that he had nothing to do with the driver of the defendant's team and no control over him, except to tell him where to go. Afterwards in cross-examination the witness testified as follows: "Q. 48. Didn't you have authority to point out the route which any of the T. W. Waterman teams hired by the day must take when working for you? A. I simply gave him a ticket and sent him to the job. They take, or can take, any route they want to to get there. Q. 49. And if you found them going the longest way you would have no right to object?

A.  I certainly would object.  Q. 50.  Yes.  You did con-
sider, then, that you had some control over the teamer?  A.
I have a little.  Q. 51.  You had all control over him, didn't
you except the power to discharge him?  A.  I had power to
send him with that load.  Q. 52.  Didn't you have all con-
trol over him except the power to discharge when you hired
T. W. Waterman's teams by the day?  A.  Yes, sir."
In redirect examination counsel for the plaintiff asked the
witness the following questions:  "Q. 53.  When you started
out a man with a load did you have any control over what
he should do, and how he should unload it, or anything
of that sort?"  "Q. 54.  Did you have anything to do with
how the man should unload this lumber?"  "Q. 55.  Did
you have anything more to do with him than when you
hired him to take out a single load?"  Each of these ques-
tions was excluded by the justice presiding and to these
rulings the plaintiff excepted.  No objection was made to
the form of these questions and they were not excluded upon
the ground that they were not proper in form.  As we have
said, it does not appear that the testimony of this witness is
of any value as to the exact nature of the relations between
Burrows and Kenyon and the driver, or as to the control
which Burrows and Kenyon had over him.  These are the
important considerations from which must be determined
whether the driver was the servant of Burrows and Kenyon
or of the defendant.  The determination of that question
depends upon the terms of the contract between Burrows
and Kenyon and the defendant and not upon the extent
of the control which a foreman of Burrows and Kenyon
has assumed to exercise over the driver.  Holmes, C. J.
said in *Driscoll* v. *Towle,* 181 Mass. 416:  "Of course the
chances are that some orders will be given which are not
strictly within the contract of the master.  That is to be
expected from the relative position of the servant and the
other party.  If the latter has something that he wants
done and sees a workingman at hand he is likely to ask him
to do it, and if it is within the penumbra of his business the

servant is likely to obey. While he thus goes outside his master's undertaking and his own contract with his master, he ceases to represent him and he may make the other liable for his acts; but he does not on that account become the servant of his master's contractee for all purposes, or when he returns to the work which his master agreed to perform." So in *Quarman* v. *Burnett*, 6 M. & W. 499, Baron Parke said: "It is undoubtedly true that there may be special circumstances which may render the hirer of job-horses and servants responsible for the neglect of a servant, though not liable by virtue of the general relation of master and servant. He may become so by his own conduct, as by taking the actual management of the horses, or ordering the servant to drive in a particular manner, which occasions the damage complained of, or to absent himself at one particular moment and the like." If, in the case at bar, some one having sufficient authority to represent Burrows and Kenyon had directed the driver in question to do something outside of the contract with the defendant, and the driver had done it, that circumstance would make the driver the servant of Burrows and Kenyon for that act, but it would not change the general nature of his relation with Burrows and Kenyon, which would still depend upon the terms of the contract between Burrows and Kenyon and the defendant. There is no testimony that Burrows and Kenyon gave any special direction as to the manner of unloading said hemlock boards in Alverson Avenue, and whether the driver was the servant of Burrows and Kenyon in that matter must depend upon the terms of the contract in accordance with which he was sent to Burrows and Kenyon. Although it does not appear that Mr. Wheat knew what was the extent of the control which he might properly exercise over the driver he was permitted to testify in cross-examination that he had all control over him except the power to discharge him. This was contrary to his previous testimony and the plaintiff should have been permitted to further

examine the witness, and, by questions proper in form, to obtain an explanation of this general answer inconsistent with his other testimony, particularly with reference to its bearing upon the important matter of unloading the hemlock boards on Alverson Avenue.

The principal exception of the plaintiff is to the ruling of the justice granting the defendant's motion for a nonsuit. It has been suggested that whatever may be determined as to the particular ground upon which the justice based his ruling, the nonsuit was proper, because the testimony shows that there was a delivery of the lumber to the customer of Burrows and Kenyon and that the legal effect of such a delivery would be to exonerate the master of the driver, whichever of these two companies it may be, from liability arising from the fall of the lumber upon the plaintiff.

There appears to have been no necessity for placing the lumber upon the highway, rather than upon the premises of the customer of the consignor; but we will not consider whether, in such circumstances, to place the lumber upon the highway created a nuisance and the person placing it there would not be relieved from liability for his negligence even if there had been a delivery of the pile in its dangerous condition to the consignee, who had continued to maintain it there in the same dangerous condition. For it is a sufficient reply to that suggestion that the testimony does not clearly show, that at the time of the accident there had been a complete delivery of the lumber to the customer of Burrows and Kenyon. It is also urged that the nonsuit was proper because the evidence presented at the trial was at variance with the allegation of duty contained in the declaration. In his declaration the plaintiff alleges that it "was the duty of the said defendant to have and maintain said pile of lumber in a reasonable safe and suitable condition." Whatever may be said as to the liability of a person who carelessly piles lumber in the highway for the results of his negligence, which may occur after he has made a delivery of the lumber to a third person, there can be no question

that until he so delivers the lumber it is his duty to have and maintain said pile in a safe condition. We have already said that from the testimony the court was not justified in finding that there had been a delivery of the lumber.

To determine whose servant the said driver was in performing the act which it is alleged was negligently done, we must look to the contract, for it is not claimed that any special instruction was given to him by Burrows and Kenyon as to the manner in which he should unload and pile up (1) said lumber. If the contract was the one ordinarily entered into between a hirer and a livery stable, an express or teaming company, the weight of authority and legal principle is that the servant sent to fulfill his master's contract remains his servant in all matters pertaining to the performance of that contract. It is a necessary part of a teamer's contract not only to carry the goods intrusted to him, but also to unload and deliver them. As to these matters the driver continues to be the teamer's servant unless by a special arrangement the driver is in some or all of these matters placed directly under the control of the hirer; or unless by the hirer's interference he makes the driver his servant as to the particular matter with regard to which he interferes. In *Driscoll* v. *Towle*, 181 Mass. 416, the court said: "In cases like the present, there is a general consensus of authority that although a driver may be ordered by those who have dealt with his master to go to this place or that, to take this or that burden, to hurry or to take his time, nevertheless in respect to the manner of his driving and the control of his horse he remains subject to no orders but those of the man who pays him." In that case the negligent act of the driver complained of was the manner of driving his horse; but the driver equally remains the teamer's servant in respect to the manner of unloading and delivering the goods of the hirer.

The only testimony which we have in the case regarding the terms of the contract between Burrows and Kenyon and the defendant is that of Edwin O. Chase, the treasurer of

Burrows and Kenyon, who testified as follows: "Q. 6. Do you know under what terms the T. W. Waterman Company were carting lumber for you on the 17th of June, 1909? A. Yes, sir; the team was carting by the hour. Q. 7. Did you have any control of the teamer? A. Not other than to give them directions, where to deliver the goods. Q. 8. Did you have any power to discharge him, or anything of that sort? A. No, sir. Q. 9. And if he did not do the work properly, what would you do? A. I would send him back to Mr. Waterman. Q. 10. Did you have any more control of him than of any expressman that you might hire? A. No, sir. Q. 11. Did you have the same control over him that you did of your own men? A. No, sir. Q. 12. All that you had to do was to give him directions where to go? A. Yes, sir." This testimony shows that the contract was the ordinary one usually made with a teaming company and the control which Burrows and Kenyon had over this driver was the same as that which a person exercises over the driver of the carriage in which he rides, when he hires a carriage and horses with a driver from a livery stable, or which a person has over the driver of a moving van sent by a teaming company upon a contract to move household goods. There is necessarily a certain amount of information, instruction and direction which the hirer must give to the driver, as he would be obliged to give the principal if he had come himself instead of sending his servant. In such circumstances the weight of authority supports the plaintiff's claim that the driver continues the servant of the defendant who is liable for any negligence of the driver in unloading and piling the lumber.

In *Morris* v. *Trudo*, 74 Atl. 387, the city of Virgennes was carrying on work on its streets under the superintendence of one Lavalley. Lavalley hired of the defendant a double team with a driver. By the terms of the hiring the driver was to do with the team whatever work he was set to do by Lavalley—whether moving stones or using a scraper or drawing gravel. In the drawing of gravel, it was for Lavalley

to direct where the gravel should be taken from, where it should be unloaded, and how it should be placed. At the time of the accident, the plaintiff, by direction of Lavalley, was assisting the driver in shoveling out a load of gravel. The court said: "One to whom the servant of another is temporarily lent or hired, has for the time being the responsibilities of a master in so far, and only in so far, as he may exercise the authority of a master. . . . The testimony tends to show that in respect to the driving of the team the defendant committed nothing to the city or its superintendent. . . . The doctrine of *respondeat superior* fastens liability upon the defendant, since the negligent wrongdoing inhered in a thing in respect to which the relation of master and servant between him and the driver had never been suspended. . . . If the contract had been such that Lavalley might have put a driver of his own choosing in charge of the team, and have put the driver furnished at some other work, the defendant would be held to have relinquished the rights of a master, and to have been freed from responsibilities as such in all respects. Such a contract, however, the evidence does not show."

In *Quinn* v. *Electric Construction Company*, 46 Fed. 506, the court said: "Pursuant to a contract by which the defendant was to furnish the Western Electric Company with a horse, truck and driver daily to do its trucking work for a specified period at a specified price, the defendant each day selected from its men and equipment the horse, truck and driver which were to be at the disposition of the Western Electric Company, and on the day the plaintiff was injured had sent Murphy with the horse and truck, which he was driving at the time. Murphy had taken a load of goods for the Western Electric Company and was returning to its factory, when he ran over the plaintiff. Under the circumstances, although the Western Electric Company was the primary employer for whom the service which Murphy was engaged in was being rendered, the defendant was Murphy's immediate superior. It had hired him, and could discharge

or retain him, and thus had the selection and control of the means of accomplishing the object of the contract which had been made between the Western Electric Company and itself. The defendant was not the servant or agent of the Western Electric Company, but was an independent contractor; hence those employed by the defendant to do the work contracted for were its servants, and not those of the Western Electric Company."

"The rule of *respondeat superior* rests on the power which the superior has a right to exercise, and which, for the protection of third persons, he is bound to exercise, over the acts of his subordinates. It does not apply to cases where the power of control does not exist, and the power does not exist when the primary employer has no voice in the selection or retention of the subordinate."

In *Stewart* v. *California Improvement Co.*, 131 Cal. 125, the court after reviewing the authorities said: "The test in all these cases is, who conducts and supervises the particular work, the doing of which or the careless and negligent doing of which, causes the injury?"

See also *Quarman* v. *Burnett*, 6 M. & W. 499; *Waldock* v. *Winfield*, 2 K. B. (1901) 596; *Consolidated Plate Glass Co.* v. *Caston*, 29 Can. Sup. Ct. 624; *Singer* v. *McDermott*, 30 Misc. 738; *Murray* v. *Dwight*, 161 N. Y. 301; *Huff* v. *Ford*, 126 Mass. 24; *Jones* v. *Mayor*, 14 Q. B. D. 890.

The plaintiff's exceptions are sustained. Case is remitted to the Superior Court for a new trial.

*Waterman, Curran & Hunt*, for plaintiff.
*Lewis A. Waterman, Ernest P. B. Atwood*, of counsel.
*Gardner, Pirce & Thornley*, for defendant.
*William H. Camfield*, of counsel.