[Civ. No. 398. Fourth Appellate District.—March 18, 1932.]

H. A. CARLSON, Respondent, v. SUN–MAID RAISIN GROWERS ASSOCIATION (a Corporation), Appellant.

Ray W. Hays and Sutherland, Dearing & Jertberg for Appellant.

B. M. Benson and Walter Stammer for Respondent.

JENNINGS, J.—This is an action by plaintiff to recover damages for personal injuries sustained by him. Plaintiff's complaint set out a cause of action against the following defendants: Sun-Maid Raisin Growers Association, a corporation, Sun-Maid Raisin Growers of California, a corporation, and Henry Krum. At the conclusion of plaintiff's case, motions for nonsuit were granted as to the two last-named defendants and a like motion was denied as to the remaining defendant. The trial resulted in a verdict of $51,000 being returned in favor of plaintiff against the remaining defendant, Sun-Maid Raisin Growers Association, a corporation, upon which a judgment for the amount specified in the verdict was rendered. Defendant contends that the judgment should be reversed for the following reasons: (1) refusal of the court to grant defendant's motion for a nonsuit; (2) failure of plaintiff's evidence to establish negligence for which defendant is liable; (3) prejudicial error committed by plaintiff's counsel in asking a certain question; (4) refusal of the trial court to give certain instructions requested by defendant and the giving of certain instructions claimed to be erroneous; (5) excessiveness of the verdict. Proper consideration of the above-stated contentions necessitates a recital of the facts presented by the record.

During the month of May, 1930, respondent was engaged in the business of hauling machinery and for a period of two years prior thereto had been engaged in such business in the city of Fresno, owning a truck especially equipped for the hauling of heavy machinery. He had been employed in doing the sort of work comprehended in the business of hauling heavy machinery for a much longer period and the conclusion is warranted that by training and long experience

he was fitted to carry on the business in which he was engaged. Some time during May, 1930, respondent was requested to call at the plant of appellant in the city of Fresno. He complied with the request and met the plant superintendent, who told him that certain machines were to be moved from plants of appellant located in various towns in Fresno County to its plant No. 4 in the city of Fresno. After some conversation between respondent and the plant superintendent in regard to the price to be charged for the work, it was orally agreed that respondent should move the machines, using his special truck and equipment, and that he would be compensated therefor at the rate of $4 per hour. In addition to his own services and the use of his equipment he was also to furnish the services of his sixteen year old son, who had been working with his father for some period of time and had acquired considerable experience in the business in which the father was engaged. It was agreed that appellant would furnish additional men to assist in the loading and unloading of the machinery that was to be moved. Pursuant to the oral agreement thus made, respondent entered upon the performance of the work contemplated. A number of machines were successfully moved from various plants of appellant to its plant No. 4, in the city of Fresno. On May 29, 1930, respondent, accompanied by his son, went to a plant in Dinuba for the purpose of moving a machine known as a stem picker, from the Dinuba plant to appellant's No. 4 plant in the city of Fresno. The stem picker consisted of a frame constructed of lumber and its dimensions were 11 feet 11 inches in height; 10 feet in length, and 6 feet in width. In the upper front part of the frame there was a cylindrical steel fan or blower. This fan was attached to the top of the frame. A steel shaft passed through the center of the fan and extended for a distance of about 1½ to 2 feet beyond each side of the frame. The weight of the stem picker was between three and four tons. The evidence showed that not only a stem picker but also two side frames, parts of another stem picker, were loaded on respondent's truck at Dinuba. Each side frame weighed from 600 to 700 pounds. The stem picker was placed on the bed of the truck and a side frame was lashed to each side of the frame of the stem picker with the horizontal center brace of each side frame rest-

ing upon the steel shaft which protruded from each side of the frame of the machine. Respondent's truck, loaded with the stem picker having the side frames lashed to it in the manner described, arrived at appellant's plant No. 4 late in the afternoon of May 29, 1930. The plant foreman thereupon instructed certain laborers who were employed at the plant to unload the stem picker. Four men appeared and assisted in the unloading of the machine from the truck. It was stipulated that these four men were laborers paid by appellant and were furnished by appellant to assist in unloading the stem picker in accordance with the oral agreement entered into between appellant and respondent. During the process of unloading, three of these men were stationed on the ground. One of the three held the rope of a block and tackle by means of which the side frame was to be lowered to the ground. The two other men were at the rear of the load to hold the side frame firm on the shaft until it was cleared and then to steady it as it was lowered by means of the block and tackle. The fourth man took a place in the upper part of the frame of the stem picker above the shaft which extended through the fan and protruded beyond the sides of the machine. This fourth man released some of the fastenings by means of which the side frame then being unloaded was lashed to the stem picker. After the various fastenings were removed, respondent's evidence indicated that this fourth man, disobeying a warning shouted to him by respondent, pushed with his feet the side frame whose horizontal center brace rested on the steel shaft. The side frame being released from the fastenings that held it in place and resting solely upon the smooth steel shaft, yielded to the force thus given and began to slip. The three other employees of appellant, who were on the ground and were supporting the side frame in the manner described, perceiving the danger that threatened, relinquished this support and moved away. The side frame then fell upon respondent, inflicting injuries of a most serious and permanent character. The physician who furnished the necessary medical care and attention to respondent testified that there was a crushing of the first and second lumbar vertebrae with practically a complete severance of the spinal cord and that respondent thereby suffered a complete paralysis of both limbs and all organs below the

injured area. This witness testified that, although respondent had recovered some motion in one of his legs and had regained partial control of his bladder and rectum, it was his opinion that respondent would never again be able to walk. This evidence was not disputed by appellant. The evidence also showed that at the time of the accident, respondent was a very strong, robust man forty-nine years of age. It was stipulated that according to the American tables of mortality, a man forty-nine years of age has a probable expectancy of 21.63 years. Respondent testified that, at the time he was injured, his earning power was between five and six thousand dollars per year.

Appellant's contention that there was no showing of negligence may be disposed of briefly. In so far as it pertains to the error claimed to have been committed by the trial court in refusing to grant the motion for a nonsuit, the statement of facts herein contained shows that the evidence presented by respondent was amply sufficient to justify the conclusion that the proximate cause of the accident and the resulting injuries sustained by appellant was the pushing of the side frame by appellant's employee who was stationed on the upper part of the frame of the stem picker. This took place after the various fastenings holding the side frame in place had been removed and when, other than the support furnished by the three employees of appellant who were on the ground, there remained no support for the heavy frame except that its horizontal center brace rested upon the smooth steel shaft. The conclusion is irresistible that the application of sufficient force to the side frame would cause it to slip from the smooth shaft and respondent's evidence shows that it did slip immediately after it was pushed by appellant's employee. When there is added to this evidence, the evidence that the three other employees of appellant who were on the ground and who furnished the only possible remaining support for the side frame, seeing that it was slipping from the shaft, relinquished this support, it is apparent that the contention that the motion for nonsuit should have been granted on the ground that there was no showing of negligence is entirely untenable. Nor do we think the contention that the verdict and judgment of the court are unsupported by sufficient showing of negligence is sustainable. It is true that the evidence produced by appel-

lant was to the effect that the employee on the machine did not push the side frame and that it tended to place the blame for the accident solely on respondent. This had no effect other than to create a conflict of evidence on the feature of negligence, which the jury was at liberty to resolve as it did in respondent's favor. It is unnecessary to cite authorities respecting the duty of an appellate court where the record presents a conflict in evidence.

The chief contention made by appellant and the one that forms the real basis for its claim that the court erred in denying a nonsuit and for its objections to various instructions given by the court and its complaint that the court refused to give certain instructions offered by appellant, rests upon the hypothesis that the employees of appellant who assisted respondent in unloading the stem picker were, at the time such assistance was being rendered, servants of respondent and that, therefore, conceding that negligence was shown, such negligence is not imputable to appellant and no liability attaches to appellant for injuries resulting from an accident caused by such negligence. Appellant's argument in support of the contention thus presented may be stated as follows: The work of unloading the machinery was respondent's work for which he was being compensated; it was work of a sort that required special skill and training; respondent was especially skilled and experienced in the performance of such work; the moving of heavy machinery requires special equipment; respondent owned such equipment; appellant's employees who assisted in unloading the machinery were laborers unskilled and inexperienced in such work; the work was done under the direction and supervision of respondent; appellant's employees at the time the work of unloading was being done were under respondent's control; such employees were, therefore, at the time of the accident not the servants of appellant but were servants of respondent and the doctrine of *respondeat superior* does not apply to fasten liability upon appellant.

In attacking the problem which is thus presented, it may be conceded at the outset that the evidence indicates that, during the work of unloading, appellant's employees were under the direction of respondent so far as the details of the work were concerned. It may also be conceded that the work then being performed was respondent's work.

However, it was work in which appellant was so interested that it had agreed to furnish men to assist in its accomplishment. "It is, of course, well recognized in this state that a servant may be loaned by his master to another so that the act done by the servant becomes the act of the master to whom he has been loaned and for the time being the general master is not responsible for his acts." (*Moss* v. *Chronicle Pub. Co.*, 201 Cal. 610, 616 [55 A. L. R. 1258, 258 Pac. 88, 90].) "In such a situation, however, it is obvious that it is necessary to ascertain who was the master at the very time of the negligent act complained of." (*Billig* v. *Southern Pac. Co.*, 189 Cal. 477, 483 [209 Pac. 241, 243].) "The application of the doctrine of *respondeat superior* in any given case depends upon the power of control which the superior possesses. . . . " (*Billig* v. *Southern Pac. Co., supra.*) "Consequently the doctrine has application only in cases where the power of control exists, and such power does not exist in a situation where the special employer has no voice in the selection or retention of the negligent subordinate (*Dupratt* v. *Lick*, 38 Cal. 691; *Higham* v. *Waterman*, 32 R. I. 578 [80 Atl. 178]; *Quinn* v. *Complete Electric Const. Co.*, 46 Fed. 506)." (*Billig* v. *Southern Pac. Co., supra.*) As was said in *Valdick* v. *Le-Clair*, 106 Cal. App. 489, 495 [289 Pac. 673, 676]: "The rule is recognized in this state that a servant may be loaned by his master to another so that the act done by the servant becomes the act of the master to whom he has been loaned and for the time being the general master is not responsible for his acts. (*Burns* v. *Jackson*, 59 Cal. App. 662 [211 Pac. 821]; *Pruitt* v. *Industrial Acc. Com.*, 189 Cal. 459 [209 Pac. 31]; *Billig* v. *Southern Pac. Co.*, 189 Cal. 477-483 [209 Pac. 241]; *Moss* v. *Chronicle Pub. Co.*, 201 Cal. 610-616 [55 A. L. R. 1258, 258 Pac. 88, 91].) This rule, however, is only applicable in cases *where the power of control exists in the special master;* that is *where the original master resigns full control over the servant for the time being.* (*Moss* v. *Chronicle Pub. Co., supra; Flori* v. *Dolph*, (Mo. Sup.) 192 S. W. 949; *Billig* v. *Southern Pac. Co., supra.*) The power of control does not exist in a situation where the special employer has no voice in the selection or retention of the negligent employee, nor where the negligent employee is *partially under the control of the*

*special master.* (*Billig* v. *Southern Pac. Co., supra; Du Pratt* v. *Lick*, 38 Cal. 691; *Higham* v. *Waterman*, 32 R. I. 578 [80 Atl. 178]; *Quinn* v. *Complete Elec. Const. Co.*, 46 Fed. 506.) In 39 Corpus Juris, page 1275, section 1462, the rule is stated as follows: 'To escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under the control of a third person; and it is necessary to distinguish between authoritative direction and control and mere suggestions as to details or the necessary cooperation where the work furnished is part of a larger operation.' "
The evidence presented by the record herein shows that appellant's servants who were furnished to respondent to assist in the unloading of the stem picker were paid by appellant, that respondent did not hire them, that respondent did not select them, that respondent could not discharge them, that respondent acquiesced in their selection, that they were under respondent's direction only so far as the details of the work were concerned. Under such circumstances, applying the principles so clearly enunciated in the foregoing quotations from the cases cited, we believe that it may not be successfully argued that respondent possessed the full power of control which is necessary if the rule of nonresponsibility of the general master for negligent acts of his servants loaned to another is to apply. Appellant contends that the work of unloading the machinery was respondent's work and it may be inferred from the argument made that the accomplishment of the work was a matter of no concern to appellant. Such an argument does violence to the plain facts. Appellant was obviously interested in the accomplishment of the work, for the oral agreement provided that the compensation to respondent should be, not a lump sum, but at the rate of $4 per hour and the very fact that appellant agreed to furnish men who would assist in loading and unloading the machinery indicates that appellant was interested in the dispatch of the work. The situation in this regard is very similar to that which is presented in *Moss* v. *Chronicle Pub. Co., supra,* where the publishing company loaned a servant, one Miotti, to assist Mowry, an independent contractor who was under contract to haul newspapers from the mail room of the publishing company to

ferries, depots, and postoffices. In commenting upon the feature of the interest of the publishing company in the doing of the work by the independent contractor, the Supreme Court remarked: "Certain it is that appellant"—the publishing company—"was so vitally interested in the dispatch of the work that the jury could have found that appellant's servant and Mowry's servant were at the time of the accident jointly engaged in a work of mutual interest to the parties, and this is true even if it be conceded that Miotti, after being ordered to this service, thereafter took his orders as to the details thereof from the servant of Mowry."

█ Complaint is made that the court erred in giving to the jury certain specified instructions offered by respondent and in refusing to give two instructions offered by appellant. The instructions that were given to which appellant objects embodied the principles of law recognized in the decisions heretofore cited and in effect advised the jury that while it is recognized that a servant may be loaned by his master to another so that responsibility for the servant's acts may rest upon the temporary or special master yet the application of the principle depends upon the power of control possessed by the superior and that such power of control does not exist where the special employer has no voice in the selection or retention of the negligent subordinate. Since, in our opinion, the principles of law contained in the instructions have received the sanction of the courts of California it follows that the instructions wherein they are contained were proper to be given. █ For like reason, we entertain the view that the court did not err in refusing to give the specified instructions offered by appellant. One of these instructions directed the jury to return a verdict in appellant's favor. The second instruction advised the jury, in effect, that if it should find from the evidence that, at the time respondent was injured, the laborers furnished by appellant were under the sole control and direction of respondent as to the method and manner of unloading the machinery, it was obligatory upon the jury to return a verdict in appellant's favor. The latter instruction incorrectly stated the law applicable to the circumstances, for even though the servants loaned to respond-

ent were under his sole control so far as the details of unloading machinery were concerned, this alone is not sufficient to relieve appellant from liability. The former instruction was manifestly improper in view of the evidence presented.

■ Complaint is also made that respondent's counsel committed prejudicial error in asking the following question when respondent was testifying: "What does your family consist of, Mr. Carlson?" Objection was immediately interposed to the question and respondent's counsel stated that as he was not certain of its propriety he would withdraw it. The court thereupon permitted the question to be withdrawn and at the request of appellant's counsel instructed the jury to disregard it. Assuming that the inquiry was improper, since no answer was given to it and it was withdrawn and the jury then and there instructed to disregard it, the contention that appellant was prejudiced thereby is not persuasive. Whatever error may have occurred was cured by the court's prompt instruction, which it must be assumed the jury followed.

■ The final contention made by appellant is that the verdict was excessive. In view of the facts developed during the trial regarding the severity and permanency of the injuries sustained by respondent and his physical condition at the time of the accident, this contention is manifestly lacking in force. An award of $50,000 for injuries so serious as to have caused total paralysis of the legs and of all organs below the first and second lumbar vertebrae, a condition which, in the opinion of the physician who cared for him, will render it impossible for respondent ever to walk again, bearing in mind that, immediately prior to the accident, he was a strong, robust man having at the time an earning capacity of between five and six thousand dollars per year and a probable expectancy of approximately twenty-one and a half years, is not so excessive as to be shocking to the sense of justice and to raise a presumption that it was the result of passion, prejudice or corruption (*Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237 [116 Pac. 513]).

The judgment is affirmed.

Marks, Acting P. J., and Lambert, J., *pro tem.*, concurred.

'A petition for a rehearing of this cause was denied by the District Court of Appeal on April 13, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 16, 1932.