[Civ. No. 6381. Fourth Dist. Nov. 13, 1961.]

PLATT WALTER PRESTON, Plaintiff and Appellant, v. JOHN H. HURTT et al., Defendants and Appellants.

Raney and Farnham for Plaintiff and Appellant.

Bolton, Groff & Dunne and Henry E. Kappler for Defendants and Appellants.

SHEPARD, J.—This is an appeal by plaintiff from an order granting a new trial after judgment for damages in a personal injury action, and a cross-appeal by defendants from an order denying defendants' motion for a judgment notwithstanding the verdict.

## FACTS

The pertinent facts presented by the record before us are substantially without conflict. They are as follows: Defendants own a home; plaintiff was a carpenter contractor with 17 years of experience. The parties discussed the construction of an additional room for defendants' home. The room size was 20 by 22 feet; plans were drawn; plaintiff submitted a bid for the carpenter work, including the furnishing of lumber materials and working tools; the bid was accepted; defendants agreed to furnish ladders and scaffolding materials. Work commenced; changes were made in the plan; the contract was changed to one of cost plus 5 per cent. Defendants had in their regular employ a handyman named Roy Bishop. It was agreed that plaintiff might call on Bishop for assistance whenever he was needed. He would then act as plaintiff's laborer although paid by defendants. The work started about February 15, 1957. A concrete slab had been laid and was the base on which the room was constructed by plaintiff. Plaintiff constructed the framework and sheeted the roof, but the shingles were put on by another contractor. Other contracts for wiring and plumbing were let to persons recommended by plaintiff. On April 9, 1957, about 2 p. m., Bishop, for his own use, placed a ladder to a point of the room near the ridgepole. This was for the purpose of doing work connected with a heater vent which was not a part of plaintiff's contract and with respect to which plaintiff had nothing to do. Plaintiff was at that time working on bookcases in the same general area. Bishop, during the morning, swept the floor twice under the direction of plaintiff. In the early afternoon and an hour or so before the ladder was put in place by Bishop, Bishop and the plaintiff, jointly, swept the floor. Plaintiff observed the manner of placement of the ladder. It was an ordinary rough construction ladder with rails of 2 by 4-inch lumber and cross-pieces of 1 by 4-inch lumber. Bishop worked on the ladder until about 4 o'clock p. m. and was up and down it several times during that period. Plaintiff saw all this. Shortly thereafter, Bishop left.

About 5:30 p. m., plaintiff had occasion to use the ladder. He checked its footing for safety, both visually and manually,

to see that it was secure from slippage, and decided to use it as it had been placed. He wished to place some molding trim near the ridgepole. He went up the ladder to measure for his molding, came back down, sawed the material to be used, and then carried it back up the ladder. He was in the process of putting the last nail in place when he "suddenly had no footing" and found both himself and the ladder on the floor. No one else was present from the time Bishop left until plaintiff fell. He did not speak to Bishop about using the ladder nor did Bishop speak to him about its use by plaintiff. There is no evidence that Bishop in any way assured plaintiff that the ladder was either safe or unsafe for plaintiff's purposes nor is there any evidence that Bishop put it in place for plaintiff's use or invited plaintiff to use it. The evidence only shows that Bishop placed the ladder in position for his own use and that that purpose was not plaintiff's work. Plaintiff testified he used the ladder along with other workmen many times during construction. He makes no criticism whatever of its construction. It did not break in any way. Nothing in the contract as related by the record contemplated that defendants would oversee or control in any way the placing of the ladder for any of plaintiff's purposes; the ladder was simply furnished to plaintiff for plaintiff to use in any way he saw fit in accomplishing the construction for which he was the contractor. There is no evidence that defendants reserved any right to supervise or direct the manner or mode of performing the work. The "use" of Bishop at any time by plaintiff was optional with plaintiff; if Bishop was in fact used by plaintiff, his position with respect to that of plaintiff was that of a subordinate doing what plaintiff directed in the manner directed by plaintiff. Plaintiff was the superior, the responsible, directing head in charge of the construction he contracted to do. Plaintiff did not look under the boards which formed the base of the ladder to see if sawdust was there. As far as the record shows, no one else was working in the room during the afternoon following the last sweeping of the floor except Bishop and plaintiff. All work was in the presence of plaintiff. If sawdust was on the floor, plaintiff, who was sawing with an electric saw and nailing wooden material in place, was fully capable of observing. Plaintiff's sole basis for reasoning that there was sawdust under the boards which formed the base of the ladder arises from his assertion that sawdust permeates the whole room when a saw is being used. There is no evidence that

anything was placed on the floor by anyone in the form of waste, water, or any other unusually slick substance. Whatever was on the floor was within the observation of plaintiff. Such scaffolding as was used by plaintiff was constructed by him of materials furnished by defendants. Plaintiff testified that the contract was for plaintiff to accomplish certain construction and that how this was done was left entirely to plaintiff. Plaintiff testified he does not know how the accident happened. He did not testify that the base of the ladder slipped. Whether it came loose at the top or bottom first is not shown by the testimony.

The cause was first tried on the question of liability. The court instructed the jury in the words of section 7156 of the California Labor Code, on section 1675, volume 8 of the California Administrative Code, and on the doctrine of res ipsa loquitur. At the close of plaintiff's case defendants moved for nonsuit, which was denied. The jury returned a verdict in favor of plaintiff against defendants on the question of liability. The damage phase of the trial then proceeded and a verdict was rendered in favor of plaintiff against defendants. Judgment resulted. Defendants moved, at the proper time, for judgment notwithstanding the verdict, or if denied, for a new trial. The motion for judgment notwithstanding the verdict was denied and a new trial was granted. Plaintiff appeals from the order granting a new trial and defendants appeal from the order denying motion for judgment notwithstanding the verdict. (Code Civ. Proc., § 963, subd. 2; *Barkett* v. *Brucato,* 122 Cal.App.2d 264, 266 [264 P.2d 978].)

### Motion for Judgment Notwithstanding Verdict

The foundation for an order granting a motion for judgment notwithstanding the verdict is, from the evidentiary standpoint, identical with that for nonsuit. (*Downey* v. *Santa Fe Transportation Co.,* 134 Cal.App.2d 720, 728 [5] [286 P.2d 40].) The motion may be granted only when, disregarding conflicts, if any, giving to the plaintiff's evidence its full face value, and according to the plaintiff's case all legitimate inferences favorable to plaintiff, it nevertheless appears from a review of the entire cause that there is no evidence upon which a judgment for plaintiff can be sustained. (*Palmquist* v. *Mercer,* 43 Cal.2d 92, 95 [1-2] [272 P.2d 26]; *Estate of Warner,* 166 Cal.App.2d 677, 679 [1] [333 P.2d 848].) The question, then, on defendants' appeal from the order denying the motion for judgment notwith-

standing the verdict, is whether or not there is any substantial evidence or legitimate inferences that may be drawn therefrom which would support a judgment in plaintiff's favor.

## NEGLIGENCE

Plaintiff contends that under the circumstances here present defendant furnished a ladder in place for the use of plaintiff; that the facts of the accident show that it was not secure; that it was put in place by defendant's employee and that the jury were entitled to infer that it was negligently placed from the mere fact that it fell. He suggests that from the evidence the jury was entitled to infer that there was sawdust underneath the boards upon which the base of the ladder rested and that the presence of the sawdust caused the boards to slip and the ladder to fall. He does not testify that he saw any such sawdust on the floor at the spot where the boards were laid at any time pertinent to the accident. He observed the placement of the ladder and the base boards. He was a man of 17 years' experience in this type of work. He testified that he had no fault to find in the action or manner of placing the ladder as observed by him. Every part of his testimony except his suspicion of sawdust underneath the boards is entirely negative of negligence. He says he cannot explain how the accident happened. We must remember that this is all his own testimony. If there was sawdust on the floor he was in a much better position to know of it than the owner, who was not present. As far as the evidence shows, plaintiff was the one and the only one who was using an electric saw in this room at the time. He was familiar with its performance. Bishop, as far as plaintiff was concerned, was a subordinate employee placed at plaintiff's disposal to carry out any orders given by plaintiff when plaintiff was using him. Nowhere does plaintiff claim that Bishop was in any way disobedient or incompetent. Thus, if it were argued that Bishop had placed the ladder for plaintiff's use at plaintiff's direction, he then became the plaintiff's servant even though defendants were the source of pay. Plaintiff had the unrestricted right to control the method and manner of Bishop's work while using him and also the unrestricted right to commence or terminate such use at any time, for any reason. (*Carlson* v. *Sun-maid Raisin Growers Assn.*, 121 Cal.App. 719, 725 [2] [9 P.2d 546].) There is not one iota of evidence that any control or direction of Bishop was reserved to defendants at any time he was working in assistance of plaintiff. The deter-

minative factor lies in whether or not any control was retained by the general employer. (*Doty* v. *Lacey*, 114 Cal.App. 2d 73, 78 [3] [249 P.2d 550] ; *Lowell* v. *Harris*, 24 Cal.App. 2d 70, 76 [1-2] [74 P.2d 551] ; *Deorosan* v. *Haslett Warehouse Co.*, 165 Cal.App.2d 599, 604 [2] [332 P.2d 422].)

However, the evidence does not contain even an inference that Bishop placed the ladder for plaintiff's use. All of the evidence shows that Bishop, in placing the ladder, did so for his own use and not for the use of plaintiff. Bishop was then working on a project entirely separate and apart from plaintiff's work. The ladder was a movable tool, available for plaintiff to take for his own use at any time he chose in such manner or mode as he desired or elected. The evidence does not show that Bishop had any intimation that plaintiff intended to use the ladder in the position in which Bishop placed it. Plaintiff's use of the ladder was on an entirely different job from that for which Bishop placed it. The evidence does not show that the ladder as placed was or was not in the position best adapted for plaintiff's use, nor that Bishop and plaintiff had any communication with each other on that subject. Plaintiff's use of the ladder was his own free election to use it in the position in which he found it. After Bishop finished his own work, about 4 o'clock p. m., he simply left. Plaintiff's decision to use the ladder was based entirely on his own independent judgment that it was placed as he wanted it, not on any representation, suggestion or communication of any kind with Bishop. While plaintiff's judgment may have been influenced to some extent by having seen Bishop safely use the ladder all afternoon, nevertheless he made additional tests, both manually and visually, as to its safety before using it. It is crystal clear from the record that the owner exercised no control over the placement of the ladder for plaintiff's use. There is no conflict. Plaintiff had sole responsibility for selecting and supervising placement. He does not claim nor even intimate that there was anything wrong with the ladder itself. It did not break. From plaintiff's own testimony it is clear that he was in a position of better knowledge of all the facts regarding proper placement than was the owner. Nothing in the evidence shows any negligence on the part of defendants. Nonsuit is proper unless some negligence of the owner is shown to have caused the accident. (*Quinn* v. *Whiteman Airport Co.*, 132 Cal.App.2d 374 [282 P.2d 88] ; *Nagle* v. *City of Long Beach*, 113 Cal.App.2d 669 [248 P.2d 799].) Plaintiff appears to

contend that the defendants were in the same position as that of a general contractor toward the subordinate workman of a subcontractor, and that therefore the safety orders referred to in Labor Code section 7156 and in section 1675 of General Safety Orders, California Administrative Code, place responsibility on the owner for placement of a movable construction ladder. This is not so. As has been so often said, each case must rest upon its own facts. Defendants here retained no supervision or control whatever over the manner of doing the work. They did not assume to know how to properly place any movable construction ladder and they did not attempt to control such placement. This knowledge and use of judgment was one of the very things for which they were paying and plaintiff was receiving extra compensation as a contractor. The possession of this knowledge to a degree superior to that of an ordinary layman was one of the reasons why plaintiff was allowed to have a contractor's license to do this type of work. Defendants did not supply a defective tool or appliance. The ladder was designed and intended for movable use according to the contractor's own judgment. Under such circumstances there could be no responsibility on the part of defendants for plaintiff's own election of how to place the ladder. (*Hard* v. *Hollywood Turf Club,* 112 Cal.App.2d 263, 275 [6] [246 P.2d 716]; *Williams* v. *Fairhaven Cemetery Assn.,* 52 Cal.2d 135, 139 [4-5] [338 P.2d 392].)

## Res Ipsa Loquitur

Plaintiff contends that the doctrine of res ipsa loquitur applies. We find no merit in this contention. ▉ As was said in *Ybarra* v. *Spangard,* 25 Cal.2d 486, 489 [1] [154 P.2d 687, 162 A.L.R. 1258]:

"The doctrine of res ipsa loquitur has three conditions:

" '(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence;

" '(2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;

" '(3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' "

See also *Wolfsmith* v. *Marsh,* 51 Cal.2d 832, 835 [1] [337 P.2d 70]. ▉ Under the uncontradicted evidence, defendants did not have control of the ladder placement for plaintiff's use and defendants did not have or attempt to exercise such control. The doctrine of res ipsa loquitur had

no application. (*Quinn* v. *Whiteman Airport Co., supra,* p. 376 [4] ; *Zar* v. *Alafetich,* 126 Cal.App.2d 643, 648 [8] [272 P.2d 922].) The only possible explanation of the verdict lies in the erroneous giving of the instructions on res ipsa loquitur and the safety orders.

### SWEEPING

 Plaintiff was the person with experience and "know-how." That was the reason the defendants hired him as a contractor. He had Bishop at his command for any assistance he desired. If he felt the floor needed sweeping, he had only to instruct Bishop to do so. In fact, the floor was swept twice in that day by Bishop under plaintiff's direction and once by plaintiff and Bishop together. Plaintiff himself testified: "A. No. When I say 'we,' I had Roy sweep it. Q. Roy swept it twice on that particular day? A. Yes, in the morning. . . . Q. And you swept it once? A. With him, at the same time. We were cleaning up." On other days, sometimes Mrs. Hurtt swept and sometimes plaintiff swept. Plaintiff asserts in his brief, ". . . From the very nature of the accident, it must be assumed that the defendants had superior knowledge of its cause." He cites no evidence in support of this assertion and we can find none. Plaintiff had 17 years of experience in this type of work; the record fails to reveal that defendants had any such experience. Plaintiff cannot evade the responsibility for his own act; the mode and manner of it was entirely dictated by his own judgment, which was the very judgment for which defendants were paying him a contractor's fee.

None of the authorities cited by plaintiff bear any factual resemblance to those of the case at bar.

The order granting a new trial is reversed. The trial court is directed to vacate the judgment for plaintiff, order that defendant's motion for judgment notwithstanding the verdict be granted, enter judgment hereon, and order that defendants' motion for a new trial be denied. Defendants will recover costs upon appeal. (*Williams* v. *Fairhaven Cemetery Assn., supra,* p. 141.)

Griffin, P. J., and Coughlin, J., concurred,