[L. A. No. 7144.   In Bank.—September 7, 1922.]

MARGARET M. BILLIG (a Minor), etc., Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), et al., Defendants; WILLIAM C. HARRIS, Appellant.

T. D. SAYRE, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), et al., Defendants; WILLIAM C. HARRIS, Appellant.

IRMA E. ROBISON, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Defendants; WILLIAM C. HARRIS, Appellant.

[1] EMPLOYER AND EMPLOYEE—GENERAL AND SPECIAL EMPLOYMENT.— One may be in the general service of one employer and, nevertheless, with respect to particular work may be transferred to the service of another, so as to become by agreement, or by force of circumstances, the servant of the latter with all the legal consequences of the new relation.

[2] ID.—APPLICABILITY OF DOCTRINE OF RESPONDEAT SUPERIOR.—The doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong at the very time and in respect to the very thing out of which the injury arose.

[3] ID.—DEPENDENCY UPON POWER OF CONTROL.—The application of the doctrine of *respondeat superior* in any given case depends upon the power of control which the superior possesses, and which for the protection of third persons he is required to exercise, over the conduct and activities of his subordinates, and consequently the doctrine has application only in cases where the power of control exists, and such power does not exist in a situation where the special employer has no voice in the selection or retention of the negligent subordinate.

[4] ID.—SPECIAL EMPLOYMENT—NEGLIGENCE—LIABILITY OF GENERAL EMPLOYER.—A general employer is not freed from responsibility for the negligent acts of an employee merely because the employee

1. Question as to which of two or more persons is master of another who is conceded to be the servant of one of them, notes, Ann. Cas. 1913B, 912; 37 L. R. A. 71.

3. Liability of master for act of servant performed under direction of another, notes, 7 Ann. Cas. 100; 14 Ann. Cas. 731.

has been hired out by the employer to a third person to be used by the latter in the performance of his work.

[5] ID.—HIRING OF TRUCK AND DRIVER—NEGLIGENCE OF DRIVER—LIABILITY OF GENERAL EMPLOYER—INSTRUCTION.—In an action for personal injuries suffered as the result of a collision between a gasoline motor car and an auto truck at a time when the truck and its driver were hired out to a third party, the court was justified in charging the jury, as a matter of law, that the driver of the truck was the agent of his general employer at such time, notwithstanding the hirer controlled the driver's conduct in loading and unloading, where the general employer never relinquished the right of control in the operation of the truck while in transit and alone had authority to discharge him.

[6] ID.—EVIDENCE—INSTRUCTION OF EMPLOYER TO DRIVER—OBEDIENCE OF ORDERS OF HIRER.—In such action, the refusal to permit the general employer to testify as a witness in his own behalf concerning a conversation which he had with a truck driver employed generally by him, who, with a truck had been hired out for the same work, relative to the hirer's control or right of control of the driver, was not prejudicial, where it was not claimed or shown that such testimony had any bearing upon the question as to who had the right to control the drivers in the operation of the trucks while in transit.

[7] ID.—RELINQUISHMENT OF CONTROL OF HIRED EMPLOYEE—ABSENCE OF EVIDENCE—PRESUMPTION.—In the absence of direct evidence or of any evidence from which it might be inferred that a general employer relinquished his right of control over the driver of an auto truck to a third party to whom the truck and driver had been hired, it must be inferred that he retained such control and as a consequence is liable for the driver's negligence. (Opinion on denial of rehearing.)

APPEALS from judgments of the Superior Court of Los Angeles County. Louis W. Myers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Newlin & Ashburn for Appellant.

E. B. Drake for Respondent.

5. Who is responsible for acts of driver of hired vehicle, notes, 13 L. R. A. (N. S.) 1123; 25 L. R. A. (N. S.) 33; 38 L. R. A. (N. S.) 973; L. R. A. 1918E, 121.

LENNON, J.—Each of the several named plaintiffs sued for and recovered judgments, in three separate actions, simultaneously tried, against the defendants, Harris and Southern Pacific Company, in sums aggregating $45,000, for personal injuries suffered by the plaintiffs as a result of a collision between a gasoline motor car operated by the defendant Southern Pacific Company, in which the plaintiffs were riding as passengers, and an auto truck owned by the defendant Harris. We have before us at this time only the three appeals of the defendant Harris, which, by stipulation of the parties to the appeals, are presented in a single record.

The collision in question occurred at the intersection of Long Beach boulevard and the tracks of the Southern Pacific Company in the county of Los Angeles. It is conceded for the purpose of the appeals that the evidence adduced upon the whole case is sufficient to support the implied finding of the jury that the collision in question resulted from the joint negligence of the engineer of the gasoline motor car and the driver of the truck. The auto truck, at the time of the collision, was employed in hauling a quantity of gasoline, which one Geiger, doing business as "Geiger & Gehres," had contracted, with the Gilmore Petroleum Company, to transport from the city of Los Angeles to the harbor at San Pedro.

Geiger and the Gilmore Petroleum Company were joined as defendants in the action, but a motion for a nonsuit as to them was granted. A motion for a nonsuit as to defendant Harris was denied, and at the request of the plaintiff the trial court charged the jury "that Walter Pratt, the driver of the auto truck on the occasion in controversy here, was the agent of the defendant William C. Harris, sued as 'Harris Bros. Truck Company,' and any negligence, if any, on his part, is imputed to the said Harris. . . . If the negligence, if any, alone of the driver Walter Pratt was a proximate cause of the accident and any injuries following to plaintiffs therefrom, then you will find damages alone against the defendant William C. Harris, sued as the Harris Bros. Truck Company." It would seem from the first of these instructions that the trial court determined, as a matter of law, that Harris was the master of and solely responsible for the conduct of Pratt, the driver

of the truck, at the time of the accident. It was the contention of the defendant Harris in the court below, and it is his contention here, that the evidence adduced upon that phase of the case · concerning the contractual relations existing, at the time of the collision, between Geiger and Harris and Pratt, which evidence embodied the evidence bearing upon the status of Pratt's servitude at the time of the collision, was in such substantial conflict as to preclude the trial court from charging the jury, as in effect it did, that, as a matter of law, necessarily deducible from the established facts of the case, the status of Pratt at the time of the collision was that of an agent of the defendant Harris.

Briefly stated, the evidence adduced in behalf of the defendant Harris, in so far as it relates to the status of Pratt at the time and place of the collision, is as follows: Pratt and his helper were at the time of the collision the general employees of the defendant Harris. The truck, Pratt and the helper employed in hauling the gasoline were rented by Geiger from Harris for the performance of a contract which Geiger had with the Gilmore Petroleum Company for the transportation of gasoline from Los Angeles to the harbor of San Pedro. Geiger was to receive under his contract with the Gilmore Petroleum Company the sum of $2.25 for each ton of gasoline transported from the Gilmore plant to the harbor and Harris was to receive from Geiger, as rental for the use of the truck, driver and helper, $1.90 per ton of gasoline hauled with his truck.

Geiger, on the other hand, while admitting the existence of a contract with the Gilmore Petroleum Company, and its terms, as above stated, testified that he had entered into a subcontract with Harris for the hauling of the Gilmore Company's gasoline and that this contract was entered into about a year before the collision in question. The subcontract, so Geiger testified, was an oral contract which continued up to the time of the collision. The sum and substance of the subcontract, according to Geiger, was that he and Harris had agreed that Harris would handle for Geiger the transportation of any excess of the Gilmore Petroleum Company's gasoline which Geiger himself could not handle, due to his lack of facilities, at an agreed price of $1.90 per ton.

Other facts practically undisputed or taken here in the light most favorable to the defendant Harris, appearing in evidence, bearing upon the status of Pratt as an employee of either Geiger or Harris at the time of the collision, as gleaned from the testimony of Geiger and Harris and other witnesses, may be substantially stated as follows:

Harris was at all times engaged in a general trucking business and so likewise was the defendant Geiger. The conduct of Geiger's business differed from that of the defendant Harris in the fact that Geiger owned no truck or transportation facilities of his own, but operated his business of procuring and consummating contracts for hauling by means of transportation instrumentalities rented by him from the defendant Harris and other persons. Geiger was at all times actively in charge of and supervised generally, either in person or through a representative, the loading and unloading that was done pursuant to and in the performance of contracts procured by him. Geiger at the time of the collision in question was engaged in the performance of a written contract entered into solely between him and the Gilmore Petroleum Company, upon which he alone was obligated. Pratt, the driver of the truck, was hired and employed by Harris generally in his trucking business and Pratt's wage of $6.50 per day, and the wages of Pratt's helper, were paid by Harris. Whether driving specially for other persons or generally for Harris, Pratt, at the conclusion of the day's work, always returned the truck to the Harris garage and daily turned in to Harris report cards of the quantities of gasoline hauled during the day, from which Harris computed his compensation and the wages of the driver and helper employed in operating the truck. Pratt and his helper, when directed in the first instance to report to Geiger, received no instructions from Harris other than to go down to the Gilmore Petroleum Company's plant. Upon arriving there, they were instructed by Geiger's foreman "where to load and what to load and how to load." Pratt exercised his own judgment as to the route to be taken by the truck employed in the delivery of the gasoline, and neither Geiger nor anyone representing him ever at any time directed Pratt as to the management and operation of the truck after it was loaded and while it was in transit. Harris furnished all of the

supplies and accessories necessary to the maintenance and operation of the truck and upon one occasion went down to the Gilmore plant and had a general talk with Pratt and his helper and on another occasion helped them to load on to the truck a tank of gasoline. Some several hours after the collision in question, Harris appeared upon the scene and cleared away the wreckage. Geiger always attended to and supervised the loading and unloading of the trucks. Upon one occasion, when Geiger complained to Harris that some of the men hired out by Harris, when loading and unloading, handled the gasoline containers too roughly, thereby causing a leakage, Geiger was told by Harris that "the men knew how to handle the stuff and that if they did not handle it right to send them to the barn." And as the result of a complaint upon another occasion by Geiger, one of the helpers employed in loading another job in which a Harris truck was being used was removed from the truck by Harris. When the men of the Harris trucks were not actively engaged in the loading of gasoline assigned to their particular truck, they were required by Geiger to assist helpers, employed by him, in loading other trucks, which were used in the same work but not owned by or rented from Harris. Upon one occasion one of the helpers questioned Geiger's authority to require him to help load another truck, and he was told, upon telephoning to Harris, that he must take his orders from Geiger. When Pratt, the driver of the Harris truck, on the day of the collision, inquired of Harris whether or not he could take the load of gasoline, which was subsequently wrecked in the collision, to the garage for the night and deliver it at San Pedro in the morning, he was told to do as Geiger desired, and when Pratt applied to Geiger for instructions the latter requested him to take the gasoline to San Pedro that night. Geiger after the accident made a claim on an insurance policy for the loss of this particular gasoline while being transported "per motor truck and trailer owned or operated by the assured."

[1] Of course, one may be in the general service of one employer and, nevertheless, with respect to particular work may be transferred to the service of another, so as to become by agreement, or by force of circumstances, the servant of the latter with all the legal consequences of the

new relation. It such a situation, however, it is obvious that it is necessary to ascertain who was the master at the very time of the negligent act complained of. [2] This is so for the doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong at the very time and in respect to the very thing out of which the injury arose. [3] In other words, the application of the doctrine of *respondent superior* in any given case depends upon the power of control which the superior possesses, and which for the protection of third persons he is required to exercise, over the conduct and activities of his subordinates. Consequently the doctrine has application only in cases where the power of control exists, and such power does not exist in a situation where the special employer has no voice in the selection or retention of the negligent subordinate. (*Du Pratt* v. *Lick*, 38 Cal. 691; *Higham* v. *Waterman*, 32 R. I. 578 [80 Atl. 178]; *Quinn* v. *Complete. Electric Const. Co.*, 46 Fed. 506.)

Whether Harris may, as a matter of law, be found to be the master of Pratt at the time of the collision and, therefore, be held liable for the damage resulting to the plaintiffs from the admittedly negligent conduct of Pratt, depends upon the answer to be deduced from the evidence, hereinbefore outlined, to the question—who, at the time and place of the collision, had authoritative control of the conduct of Pratt in his management and operation of the auto truck while in transit?

The fact that the evidence is in substantial conflict concerning the character of the contract existing between Geiger and the defendant Harris is an immaterial factor in the solution of the question as to who was the master of Pratt at the time of the collision. And this is so for the reason that whether it be found that Harris merely rented to Geiger the men and means employed in the performance of the work contracted for by Geiger or was in the performance of the work in the capacity of an independent subcontractor, the correctness of the trial court's charge to the jury must, in the last analysis, be tested solely by the determination from the established evidence in the case—that which is undisputed, coupled with that

which favors the defendant Harris—as to who, at the time
and place of the collision and with respect to the manner
and method of operating and controlling the auto truck,
while in transit, possessed the right, either express or im-
plied, to exercise exclusive direction and control of the
conduct of Pratt.  That is to say, who was Pratt bound to
obey concerning the control, management and operation
of the auto truck after it had been loaded in keeping with
the desires and directions of Geiger and while it was in
transit between the place of loading and the place of de-
livery? (*Burns* v. *Jackson,* 53 Cal. App. 345 [200 Pac.
80] ; *Cotter* v. *Lindgren,* 106 Cal. 602 [46 Am. St. Rep. 255,
39 Pac. 950] ; *Boswell* v. *Laird,* 8 Cal. 469; *Standard Oil Co.*
v. *Anderson,* 212 U. S. 215 [53 L. Ed. 480, 29 Sup. Ct.
Rep. 252, see, also, Rose's U. S. Notes].)

[4] Whatever the rule and its variations may be in
other jurisdictions, it is the settled rule of law in this
state, applicable to cases of the character under considera-
tion here, that a general employer is not freed from re-
sponsibility for the negligent acts of an employee merely
because the employee has been hired out by the employer
to a third person to be used by the latter in the perform-
ance of his work. (*Stewart* v. *California Improvement Co.,*
131 Cal. 125 [52 L. R. A. 205, 63 Pac. 177, 724].)  The
case last cited is in fact and principle strongly analogous
to the case at bar.  In that case it appeared that the de-
fendant company had hired out, to a municipality, a steam
roller, together with an engineer, one of the company's
general employees, to be used in the rolling and leveling
of a city street, which work was being done under the
direction of the city's superintendent of streets.  The
plaintiff in that case suffered injuries caused by the negli-
gent operation of the engine by the defendant company's
engineer, and said company was held liable for the result-
ant damages upon the theory that the facts showed, as a
matter of law, that the relation of master and servant ex-
isted between the defendant company and its engineer and
that no such relation existed between the municipality and
the engineer.  This was held to be so primarily because
of the undisputed facts that the city had merely hired
from the defendant company, at a stipulated per diem, the
services of the engineer and the use of the instrumentality

employed in the performance of the municipality's work and that its agent had authority only to direct and supervise the work in hand and did not have the authority to control the engineer in his operation and management of the engine.

The court there, evidently, predicated and fixed the liability of the defendant company upon the theory that, in the absence of an agreement to the contrary, the operation of the engine was subject entirely to the skill and judgment of the engineer who in the first instance was the selected and, at all times, the paid servant of the defendant company, employed for the purpose of operating the engine, and who could be discharged only upon the direction of the defendant company.

It would appear, therefore, to be the rule in this state that when a master hires out, under a rental agreement, the services of an employee for the operation of an instrumentality owned by the master, together with the use of the instrumentality, without relinquishing to the hirer the power to discharge such servant, to go where and perform such work as the hirer directs, the legal presumption is that, although the hirer directs the servant where to go and what to do in the performance of the work, the servant, as the operator of the instrumentality employed in the doing of the work, remains, in the absence of an agreement to the contrary, the servant of the general employer in so far as concerns the manner and method of operating the instrumentality, and the negligence of the servant must be held to be that of the owner and not that of the hirer of the instrumentality. (*Stewart* v. *California Improvement Co., supra; Garven* v. *Chicago, Rock Island & Pacific Railway Company,* 100 Mo. App. 617, 620 [75 S. W. 193]; note to *Hardy* v. *Shelden* Co., 37 L. R. A., p. 71.)

[5] While the evidence in the instant case shows that Geiger, under the implied terms of the claimed contract of hiring, possessed and exercised authority to control the conduct of Pratt in the work of loading and unloading, nevertheless, so the evidence shows, Geiger never assumed the right to direct and control Pratt in his operation of the truck while in transit, and there is no evidence showing, or tending to show, with respect to the operation of the

truck, while in transit, that the defendant relinquished unto Geiger the right to control Pratt. The fact is undisputed that Pratt was the general paid employee of the defendant Harris, and while it was shown in evidence that Geiger was empowered by Harris to send to the barn inefficient helpers who were engaged in loading and unloading, still the only inference to be deduced from the undisputed evidence is that the right to hire and discharge the men rented to Geiger by Harris rested finally in Harris, and that Harris alone discharged them. The evidence does not show that Pratt for any cause might have been discharged by Geiger and replaced by a driver of Geiger's own selection. Retaining in himself, as Harris did, the right to hire and discharge Pratt, and there being no evidence showing, or tending to show, that Harris, either expressly or impliedly, relinquished control of Pratt in the operation of the truck, there was no possible basis upon which the jury could have found that Pratt was, as a matter of fact, the servant of Geiger, and, therefore, the trial court was justified in charging the jury, as a matter of law, that under the established facts of the case, Pratt was agent of Harris at the time of the collision. (*Higham* v. *Waterman,* 32 R. I. 578 [80 Atl. 178]; *Morris* v. *Trudo,* 83 Vt. 44 [25 L. R. A. (N. S.) 33, 74 Atl. 387]; *Fink* v. *Brown* (Tex. Civ.), 183 S. W. 46, 49.)

The view we have taken of the evidence relative to the status of Pratt at the time of the collision, and what we have thus far said, in effect disposes of the remaining contentions made in support of the appeal upon the question of the agency of Pratt and the responsibility of Harris for the damages resulting from the admittedly negligent conduct of Pratt.

[6] Complaint is made of the ruling of the trial court refusing to permit the defendant Harris to testify as a witness in his own behalf concerning a conversation which he had with one Hilbert, a truck driver employed generally by Harris, who, with a Harris truck, had been hired by Geiger for work in the transportation of the Gilmore Petroleum Company's gasoline, relative to Geiger's "control or right to control" Hilbert. An objection to the testimony thus sought to be elicited was sustained in part upon the ground that it was self-serving, leading, and,

primarily, upon the ground that it was hearsay, and there-
fore incompetent. Conceding, without deciding, that the
objection, as stated, was not well taken, still the trial
court's ruling was without prejudice to the defendant, be-
cause it was not claimed nor shown that the testimony in
question had any bearing upon the question as to who had
the right to control the Harris drivers in the operation of
the Harris trucks while in transit. To the contrary, it is
conceded that the question objected to "sought to elicit
. . . the instruction given by Harris to Hilbert about the
necessity of obeying Geiger when Hilbert telephoned [to
Harris] to ascertain whether it was necessary for him
[Hilbert] to assist in unloading Geiger's trucks as directed
by Geiger." Hilbert had previously testified that the in-
structions which he had received from Harris in the con-
versation referred to in the question which was objected to,
were in effect that the loading was to be done in accordance
with Geiger's directions, and that the truck drivers must
assist in loading whenever Geiger ordered them to do so,
and it may be taken as an undisputed fact in the case that
the truck drivers were required to assist in loading and
unloading, and, while thus occupied, were under Geiger's
control and direction, so, therefore, it is apparent that the
refusal to permit Harris to testify to the same effect could
not have operated to his prejudice.

Complaint is also made of the ruling·of the trial court
sustaining objections to a series of questions propounded
to Pratt upon cross-examination while testifying as a wit-
ness for the plaintiff, which were designed to elicit the fact
"that while hauling gasoline for Geiger he [Pratt] was
receiving and obeying orders only from Geiger or [Pierce]
his representative." The objections to these questions were
in the main rightly sustained, but aside from any question
of the correctness of the rulings, the record shows that the
questions objected to were in fact subsequently answered
by Pratt upon recross-examination, wherein he testified:
"I never had any instructions from anybody . . . at the
Gilmore plant except when somebody told me where the gas
was that was to be transported and where it was to go.
Nobody there ever told me how to drive my truck, Mr.
Geiger, Mr. Gehres, Mr. Pierce, nor any of the men there
ever told me anything about the driving of the truck nor

said anything to me about the way in which I did drive my truck.''

The judgment is affirmed.

Waste, J., Richards, J., *pro tem.*, Shaw, C. J., Wilbur, J., Lawlor, J., and Sloane, J., concurred.

Rehearing denied.

In denying a rehearing the court filed the following opinion on October 5, 1922:

THE COURT.—The case of *Pruitt* v. *Industrial Accident Commission, ante,* p. 459 [209 Pac. 31], does not conflict with the instant cases, as is contended in the petition for rehearing. In the instant cases the relationship of general employer and employee existed between Harris and Pratt prior to the contract of hire of the truck and driver by the special employer, Geiger. Pratt was employed by Harris, his wages were paid by Harris, and he could only be discharged and replaced by Harris, and daily he made reports to Harris as to the amount of work performed. This and other uncontradicted evidence tended to show that Harris exercised exclusive control over Pratt in all respects except as to the loading and unloading of the truck. [7] In the absence of direct evidence or of any evidence in the instant cases from which it might be inferred that Harris at the time and place of the collision and with respect to the manner and method of operating and controlling the auto truck while in transit had relinquished to another person his right of control over the driver of the truck, it must be inferred that he retained such control and as a consequence was liable.

On the other hand, in *Pruitt* v. *Industrial Accident Commission,* the evidence leads to the opposite conclusion. In that case Conklin was hired by Graham Bros. to haul gravel and was paid by them. At the inception of the hiring of Conklin, and for some time afterwards, Graham Bros. exercised exclusive control over Conklin and his operation of the truck in general. Two weeks before the accident Pruitt purchased the truck in question but made no change in the arrangement between Conklin and Graham Bros.

except to take as owner of the truck a percentage of the amount earned by Conklin. There is no evidence, either direct or inferential, that Pruitt at any time assumed any control over the truck or the driver. The inference was therefore justified in that case that Graham Bros. retained control and were exercising it at the time of the collision. Pruitt therefore would not be liable.

Lennon, J., Richards, J., *pro tem.*, Lawlor, J., Waste, J., and Wilbur, Acting C. J., concurred.