[Civ. No. 5963. First Appellate District, Division Two.—November 9, 1927.]

EDWARD O. TILBURNE et al., Appellants, v. JAMES R. C. BURTON, etc., et al., Respondents.

Mark L. Herron and Russell Graham for Appellants.

Randall, Bartlett & White and C. W. Byrer for Respondents.

NOURSE, J.—Plaintiffs sued for damages arising from a collision between an automobile operated by plaintiffs and a truck operated by defendant Gepperd, who, plaintiffs contended, was an agent and employee of defendant Burton. The cause was tried before a jury and resulted in verdict in favor of plaintiffs against defendant Gepperd and against the plaintiffs as to defendant Burton. The plaintiffs appeal from the portion of the resulting judgment adverse to them. The appeal is presented on a bill of exceptions.

At the time of the collison the truck was owned by defendant Burton, but was rented by him to the city of Los Angeles under a written contract whereby Burton undertook to furnish the city seven trucks with drivers for the collection of refuse. The proposal and specifications under which the contract with the city was made (offered in evidence by defendant as a part of the agreement) called upon the defendant to furnish the machines and provide drivers for them, to furnish all fuel and supplies, to make all necessary repairs and to provide garage. Every driver was required to perform his work in a satisfactory manner and as may be specified by the city engineer, and "any driver whose services are not satisfactory to the city engineer shall be discharged by the contractor" (defendant). Payment was to be made at the rate of $10.85 per day for each truck and driver. The contractor had the power to employ and discharge the driver and was alone responsible for the fixing and payment of his wages. He was also required to carry indemnity insurance "covering his full liability of compensation under said act (Workmen's Compensation

Act [Stats. 1917, p. 831]) for any person injured while performing any work" under the contract.

The city undertook to direct the routes the drivers should cover in collecting the rubbish and general directions were given by the city's representative to all drivers that they should zigzag from the right-hand side of the road to the left and back again to pick up the rubbish as they found it. The defendant Burton testified that he satisfied himself that this particular driver was a competent and courteous driver and that he instructed all his drivers to be careful and prudent and that he would discharge them if they were reckless.

There is some conflict in the evidence as to what was the actual cause of the collision. The witnesses for the plaintiffs testified that the truck was proceeding slowly near the middle of the highway, that, as plaintiffs appeared from the rear they sounded their horn and attempted to pass to the left of the truck, but that the truck swerved suddenly to the left as plaintiffs were about midway and caught the rear wheel of plaintiffs' car, causing it to upset. The driver of the truck did not appear as a witness, but two "swampers" who were riding with him at the time testified that the truck had gone to the left-hand curb about two hundred feet back of the place where the collision occurred and they had there picked up a barrel of rubbish, that it continued slowly along the left-hand side of the highway, the left wheels running in the dirt to the left of the pavement, and that plaintiffs endeavored to pass the truck while traveling at a high rate of speed and without giving any warning signal.

The jury having returned a verdict against the driver of the truck, we must presume on this appeal that it found him negligent. The only point raised by appellants on their appeal is whether the jury was properly instructed as to the liability of the respondent Burton. The only instruction which the appellants complain of reads: "If you find that defendant Gepperd did turn his truck to the wrong side of the street, but that he did so by direction of the city of Los Angeles and its agents, and that at the time he did so the defendant Burton had no control of direction over the route or direction of the truck, but that the operation and route of the truck was under the direction

of said city of Los Angeles and its agents, then I instruct you that you should find a verdict in favor of the defendant James R. C. Burton.''

The issue was drawn bringing forth the inquiry whether the driver continued liable to the direction and control of his original master or became subject to that of the city to which his services were let (26 Cyc. 1522). The ''doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong at the very time and in respect to the very thing out of which the injury arose.'' (*Billig* v. *Southern Pacific Co.*, 189 Cal. 477, 483 [209 Pac. 241, 243].) Evidence had been offered to show that the city had full power to direct the course of the drivers during the period of employment, that it had the power to direct the contractor to discharge any of them if his work was unsatisfactory, and that it had given special directions for them to zigzag across the highway to pick up the rubbish. It was for the jury to determine whether, under these circumstances, the city or the contractor ''possessed the right, either express or implied, to exercise exclusive direction and control of the conduct of the driver while the truck was in transit.'' (*Billig* v. *Southern Pacific Co.*, *supra*.)

The jury had been instructed at the request of the plaintiffs that if they found that the ''driver was not employed by Burton or was not subject to his orders and control as to the manner in which he operated the truck . . . he (Burton) would not in that event be liable.'' And, also, that if they found that the driver ''was selected and employed by the defendant James R. C. Burton and that his qualifications to drive that truck were passed upon by the defendant Burton or those acting for him, and further that at the time of the acts constituting the negligence the truck driver was governed by or subject to the orders and control of the defendant Burton as to the manner in which he operated the truck . . . then the defendant Burton is responsible as such employer for such negligence.'' These instructions, taken with the one complained of, left with the jury the determination of the question who was the master of the driver and as such responsible for his conduct

at the time of the collision. If the court had been asked to determine this relation as a matter of law, as was done in the Billig case, the correctness of the ruling in view of the conflicting evidence in this case would present a difficult problem. But in view of the fact that the instruction requested by the plaintiffs and given by the court left the question of direction and control with the jury in practically the same language as is found in the instruction complained of, the plaintiffs could not have been prejudiced by this latter instruction.

It is said in *Stewart* v. *California Improvement Co.*, 131 Cal. 125, 131 [52 L. R. A. 205, 63 Pac. 177] : "The test in all these cases is, Who conducts and supervises the particular work, the doing of which, or the careless and negligent doing of which, causes the injury or damage?" Both the Stewart and the Billig cases have been cited by appellants. In both cases the general employer was held responsible for the negligence of the employee on the undisputed evidence that the hirer had no power of direction or control over the conduct of the servant and no power to discharge if his work proved unsatisfactory. Here the evidence of the power of direction and control was conflicting and the city retained the right to demand the discharge of the servant if his work proved unsatisfactory and the contractor agreed to comply with this demand.

Judgment affirmed.

Koford, P. J., and Sturtevant, J., concurred.