[Civ. No. 9435.   Third Dist.   Nov. 28, 1958.]

ALEX DEOROSAN, Appellant, v. HASLETT WARE-HOUSE COMPANY (a Corporation) et al., Respondents.

Nathaniel S. Colley and Mamoru Sakuma for Appellant.

Desmond, McLaughlin & Russell for Respondent Haslett Warehouse Co.

602

Fitzwilliam, Memering & McDonald for Respondent West Sacramento Storage Co.

Russell A. Harris for Respondent Beagle Products Co.

SCHOTTKY, J.—Plaintiff above named commenced an action against defendants Haslett Warehouse Company, Beagle Products Company, West Sacramento Storage Company and Melvin Bunch to recover damages for injuries sustained through the alleged negligence of Bunch, who, it was alleged, was an employee of the aforesaid defendants. The default of Bunch for failure to answer was entered, and after the plaintiff's case had been presented, the trial court granted the motion of each of the other defendants for a nonsuit. Judgment of nonsuit was entered in favor of each of said defendants, and plaintiff has appealed from each of said judgments. After the nonsuits were granted as to the other defendants, the jury was dismissed, and the court fixed the damages against Bunch at $145,295.39.

■ A nonsuit may be granted only when, disregarding conflicting evidence on behalf of the defendants and giving to plaintiff's evidence all the value to which it is legally entitled, therein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff. (*Estate of Lances,* 216 Cal. 397, 400 [14 P.2d 768]; see also 24 Cal.Jur. 913, and cases cited.) Bearing in mind these familiar and well settled principles, we shall summarize briefly the evidence introduced in the trial court.

In order to facilitate the financial operations of its business by storing its merchandise in a bonded warehouse, Beagle Products Company, a copartnership, leased its West Sacramento warehouse to Haslett Warehouse Company, an operator of bonded warehouses. It was agreed between the parties that Haslett could store the products of firms other than Beagle in the warehouse. To operate the warehouse Haslett employed Melvin Bunch and several other persons who had been in the employment of Beagle. The persons employed by Haslett were subject to Haslett's orders, though Beagle reimbursed Haslett for the wages of the employees. The amount reimbursed included a sum sufficient to cover Haslett's share, as employer, of social security and unemployment insurance taxes. Bunch's primary duty was that of a watchman in the

warehouse, but it was understood between Haslett, Beagle and Bunch that Bunch could assist Beagle when it did not interfere with his duties for Haslett. Haslett alone retained the right to discharge Bunch.

Beagle Products Company was in the business of salvaging rice. In March, 1956, Beagle Products Company entered into an agreement with West Sacramento Storage Company to clean its storage warehouse located adjacent to the one operated by Haslett. It was agreed that Beagle would clean the warehouse, which had been used for storing "paddy" rice, by removing all rice, husks and debris from the rafters and ledges of the building. In return Beagle was entitled to all the rice it could obtain from the cleaning operation. The warehouse was cleaned by having a worker use an air hose to blow the rice from the ledges and rafters. To accomplish this task a platform of wooden pallets was constructed upon which the worker would stand while he was operating the air hose used in the cleaning operation. Bunch was used by Beagle to operate a forklift truck with which the pallets would be moved around the warehouse. After the operation had been in progress for several days, Eldon Beagle, who was a co-owner of Beagle Products Company, instructed the foreman of Packaged Hulls Incorporated, a company of which Eldon Beagle was a vice president, to send appellant herein, Alex Deorosan, over to the warehouse to assist in the cleaning operation. Packaged Hulls was a family corporation. All of its stock was owned by Elden Beagle, C. A. Beagle and Vera Beagle, who were also the sole partners of Beagle Products Company. Packaged Hulls and Beagle Products were separate entities, but on occasion each used the employees of the other for brief periods for specific tasks. Beagle Products Company carried workmen's compensation insurance at the time of the cleaning operation on the same policy and with the same company as Packaged Hulls, so that the employees of each company were insured by the same policy.

At the close of the work day on March 30, 1956, Bunch began to move the forklift truck, with the pallet platform attached to it, away from a wall of the warehouse so that Deorosan, who was standing on it, could dismount from the platform. Before Deorosan could dismount, the entire platform fell forward. He was thrown from the platform to the cement floor of the warehouse. He suffered severe injuries in the fall. He is receiving workmen's compensation for the injuries.

Other evidence will be referred to in the course of this opinion.

We shall first discuss appellant's appeal as to the nonsuit in favor of

### Haslett Warehouse Company

Appellant's first contention is that there was substantial evidence that Melvin Bunch, the forklift operator, was the employee of the Haslett Warehouse Company, acting within the course and scope of his employment, and that the trial court erred in granting a nonsuit as to said defendant.

It is not disputed that Bunch was an employee of Haslett, but in order to make Haslett liable for the negligence of Bunch, it must be established by the evidence that at the time of the accident here involved he was acting within the course and scope of his employment by Haslett. Respondent Haslett states that "The basic issue is whether Haslett Warehouse Company, the general employer of Melvin Bunch, surrendered to Beagle Products Company, his special employer, the right to control his activities at the time the accident occurred."

It is the well-settled rule, as stated in *Lowell* v. *Harris,* 24 Cal.App.2d 70, 76 [74 P.2d 551], that "An employee may be in the general service of one person, and may be lent or hired to another for some special service; and if in that service he is subject wholly to the direction or control of that other person, the latter, and not the general employer, is the master *pro hac vice,* and is liable for injuries caused by negligent or wrongful acts of the employee, while engaged in the performance of duties pertaining to such special service. . . ."

Appellant states that Haslett was the employer of Bunch, paid Bunch's wages, had the right to discharge him, and had the control of him. Each case must be decided upon its own facts, and there appears to be no dispute as to the facts in the instant case. It is clear that Bunch was employed as a watchman by Haslett in the warehouse it operated. Haslett and Beagle Products Company had an agreement that when there was not enough work at the warehouse to keep Bunch or any of the other employees busy any of the employees could be dispatched outside the warehouse to do such work as Beagle Products might request.

As a watchman of Warehouse 69-B he was obligated to Haslett Warehouse Company to protect the integrity of the inventory stored therein. He and the other watchmen, who had the possession of the keys, were obligated to remain about the

warehouse when it was unlocked. All parties recognized that he was forbidden to deliver goods from that warehouse except on order of William Hanson, the bonded agent of Haslett Warehouse Company. With respect to Warehouse 69-B and its inventory, Bunch was clearly under the control of Haslett Warehouse Company, and not under the control of Eldon Beagle.

But the uncontradicted evidence is to the effect that the parties intended that when the warehouse was locked, and when Bunch's services were not required therein, the right to control his activities was vested in Beagle Products Company to the same extent that it had been vested in Beagle Products Company when Bunch was on its payroll during the three years prior to his appointment as bonded watchman.

Appellant argues that it is fairly inferable from the evidence that as part of his service to Haslett it was the duty of Bunch to help Beagle whenever it did not conflict with Bunch's primary duty to Haslett. Appellant argues further that "without conflict, the evidence points to the fact that Bunch was Haslett's employee, acting within the 'scope of his employment,' and it is difficult to see how any reasonable inference to the contrary could be drawn."

Appellant contends also that "Assuming, for the purposes of argument only, that Haslett was Bunch's general employer, and Beagle his special employer, the liability of Haslett to appellant for the tort of Bunch is unaffected." Appellant then states the rule that a general employer may escape responsibility for the torts of his servant only if he resigns full control of the servant. He argues that continuance of wage payments, carrying of workmen's compensation insurance, the right to recall the servant without notice, and retention to the right to discharge the employee are all inconsistent with surrender of such control.

Appellant relies strongly on *Scrimsher* v. *Reliance Rock Co.*, 116 Cal.App. 500 [2 P.2d 862], and *Doty* v. *Lacey*, 114 Cal. App.2d 73 [249 P.2d 550]. *Scrimsher* v. *Reliance Rock Company* was an action for damages for injuries caused by the alleged negligent operation of a power shovel which the decedent's employer had rented from the defendant. Defendant was the owner of the power shovel and the employer of Barnes. The shovel was leased to the employer of the decedent, and Barnes was furnished as the operator. In reversing a judgment of nonsuit in favor of defendant, the appellate court said, at pages 503, 504:

"The fact stands admitted in the record that Reliance Rock Company originally paid for the services of the operator of the power shovel, and that the compensation later paid by Oswald Brothers to Reliance Rock Company for the use of the shovel included the compensation paid by the latter to the operator thereof for his services. The record herein is silent as to the existence of any agreement between Reliance Rock Company and Oswald Brothers to the effect that in any way the former surrendered or resigned control of its employee other than that Oswald Brothers had authority to direct him 'what to do in the performance of the work.' (*Billig* v. *Southern Pac. Co.*, 189 Cal.. 477, 485 [209 P. 241, 244].)

.    .    .    .    .    .    .    .    .    .    .    .    .    .

" Considering that one of the issues in the action upon which depended the case for the plaintiffs as against the defendant Reliance Rock Company was whether the operator of the power shovel at the time of the happening of the accident was an employee of said defendant,—by application of the principles of law to which attention hereinbefore has been directed which relate to the determination of a motion for nonsuit, it becomes apparent that for such purpose the evidence introduced by the plaintiffs on the trial of the action, if it did not clearly establish the fact itself, readily would admit of the inference that the operator of the power shovel was an em-employee of the defendant Reliance Rock Company at the time in question.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"In the case of *Stewart* v. *California Improvement Co.*, 131 Cal. 125 [52 L.R.A. 205, 63 P. 177, 724], it appeared that an engineer was employed and paid by the defendant corporation to operate a steam roller which, with the services of such engineer, had been hired at a per diem rate by a city from the defendant corporation. In an action for damages for personal injury which arose from the alleged negligence of the engineer, it was held that the engineer was the servant, not of the city to which his services had been lent, together with the steam roller, but of the defendant corporation, and that the latter was liable for such damages as resulted to the plaintiff from the negligent operation of the roller.''

On page 505 the court quoted from the case of *Billig* v. *Southern Pac. Co.*, 189 Cal. 477, 485 [209 P. 241], as follows:

" 'It would appear, therefore, to be the rule in this state that when a master hires out, under a rental agreement, the services of an employee for the operation of an instrumentality

owned by the master, together with the use of the instrumentality, without relinquishing to the hirer the power to discharge such servant, to go where and perform such work as the hirer directs, the legal presumption is that, although the hirer directs the servant where to go and what to do in the performance of the work, the servant, as the operator of the instrumentality employed in the doing of the work, remains, in the absence of an agreement to the contrary, the servant of the general employer in so far as concerns the manner and method of operating the instrumentality, and the negligence of the servant must be held to be that of the owner and not that of the hirer of the instrumentality.' [Citing authorities.]' "

In the case of *Doty* v. *Lacey, supra*, the plaintiff was an employee of Brown Drilling Company who was engaged in transporting heavy oil field equipment. An agreement was made with defendant Lacey whereby Lacey agreed to furnish trucks and drivers, a crane with operator and other equipment. Lacey's equipment broke down and Wonderly furnished a mobile crane with an operator. The accident occurred due to the negligence of the operator of Wonderly's crane. The trial court directed that a verdict be entered in favor of Wonderly. In reversing the judgment the court said, at page 78:

" ' In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it.' (1 Rest., Agency, 501, § 227.)

" A general employer may lend his employee together with an instrumentality in such a manner as to render the person to whom the employee is loaned the special employer for the time being and hence relieve the general employer from liability for the employee's negligence in the operation of the instrumentality. But to escape liability, the general employer must relinquish full control of the employee for the time being, it not being sufficient that the employee is partially under the control of the third person; and it is necessary to distinguish between authoritative direction and control and mere suggestions as to details or the necessary cooperation where the work furnished is part of a larger operation. (*Peters* v. *United Studios, Inc.*, 98 Cal.App. 373, 379 [277 P. 156]; *Lowell* v. *Harris*, 24 Cal.App.2d 70, 76 [74 P.2d 551].) 'A

continuation of the general employment is indicated by the facts that the general employer may at any time substitute another servant, that the time of employment is short, and that the lent servant has the skill of a specialist.' (1 Rest., Agency, 501, § 227.)

"Applying these rules, it is manifest that the evidence was such as to warrant the jury in concluding that Wonderly was an independent contractor; that Brown was not a special employer; and that Winkler was the employee of Wonderly and not of Brown. There is no evidence of release of authoritative control by Wonderly. There was no express agreement that Wonderly should relinquish to Brown complete control over either Winkler or the crane. Wonderly did not confer on Brown the right to discharge Winkler. Brown, if dissatisfied with Winkler, might have asked Wonderly to provide another operator, but there was no power in Brown to discharge Winkler and put the crane under operative control of a man of its own. Wonderly might at any time have exercised its discretion and substituted some other operator in place of Winkler. The right of Brown—if it had such right—to tell Winkler what to load, when and where to go, the route to be taken in moving the crane,—did not give Brown any right of control of Winkler as to the manner and method of operating the crane. (*Moss* v. *Chronicle Pub. Co.*, 201 Cal. 610, 615 [258 P. 88, 55 A.L.R. 1258]; *Entremont* v. *Whitsell*, 13 Cal.2d 290, 296 [89 P.2d 392]; *Lowell* v. *Harris*, 24 Cal. App. 70, 79-81 [74 P.2d 551]; 57 C.J.S. 284, § 566.) A direction to 'do anything they wanted to take care of' does not necessarily indicate an intention by the general employer to surrender control of the employee. (*Umsted* v. *Schofield Eng. Const. Co.*, 203 Cal. 224, 229 [263 P. 799].)"

Respondent Haslett, in reply, states that in each of the cases relied on by appellant the employer was the owner of equipment which had been rented or leased with the services of an employee who was to operate the equipment, and that in each instance the driver or the operator who was furnished by the owner of the equipment remained on the payroll of the equipment owner who was reimbursed at a fixed rate for the use of the equipment and the services of the employee. Respondent Haslett then states that since the Billig case the California courts have followed the rule adopted in other jurisdictions that an employer who rents equipment and furnishes an operator is presumed to retain the right to control the activities of the operator in the absence of an

express agreement to the contrary or in the absence of the surrender of the right to terminate employment. Respondent Haslett contends that the presumption does not operate in the instant case since no equipment was leased by Haslett Warehouse Company to Beagle Products Company.

Respondent Haslett quotes from *Billig* v. *Southern Pac. Co.,* *supra*, at page 482 as follows:

"Of course, one may be in the general service of one employer and, nevertheless, with respect to particular work may be transferred to the service of another, so as to become by agreement, or by force of circumstances, the servant of the latter with all the legal consequences of the new relation. In such a situation, however, *it is obvious that it is necessary to ascertain who is the master at the very time of the negligent act complained of. This is so for the doctrine of respondeat superior applies only when the relation of master and servant is shown to exist between wrongdoer and the person sought to be charged for the result of some neglect or wrong at the very time and in respect to the very thing out of which the injury arose.* In other words, the application of the doctrine of *respondeat superior* in any given case depends upon the power of control which the superior possesses, and which for the protection of the third persons he is required to exercise, over the conduct and activities of his subordinates. Consequently the doctrine has application only in cases where the power of control exists, and such power does not exist in a situation where the special employer has no voice in the selection or retention of the negligent subordinate. [Citing cases.]

"Whether Harris may, as a matter of law, be found to be the master of Pratt at the time of the collision and, therefore, held liable for the damage resulting to the plaintiffs from the admittedly negligent conduct of Pratt, depends upon the answer to be deduced from the evidence, hereinbefore outlined, to the question—*who, at the time and place of the collision, had authoritative control of the conduct of Pratt in his management and operation of the auto truck while in transit?"* (Emphasis added by respondent.)

We believe that the decisions relied upon by appellant are clearly distinguishable from the instant case because of the difference in the factual situations. In those cases the general employer was the owner of equipment which had been leased with the services of an employee who was to operate

the equipment, and the general employer had a vital interest in the proper operation of the equipment. In the instant case Haslett neither leased nor had any interest in, or control over, the operation of the equipment used in cleaning the warehouse where the injury occurred. We believe that the statement of the trial judge in ruling upon the motion for a nonsuit correctly analyzed the evidence as follows: "... It's been established that Bunch was the employee of Haslett for a specific purpose—namely, in relation to the activity in connection with this field warehouse referred to in the evidence, I think, as 69-B. This employment was the result of an arrangement between Beagle Products and Haslett, entered into between the parties in order that the warehouse owned by Beagle, leased to Haslett, might be bonded. While it is the fact that Haslett was liable for the wages earned by Bunch, required to pay such wages, it is also the fact that the wages were in truth and fact being paid by Beagle, and he was required under his contract to reimburse Haslett for any wages paid to Bunch by Haslett. According to the evidence, Haslett alone had the right to discharge Bunch. It is also undisputed that Bunch was permitted to work in other warehouses, and other places of employment, at the discretion of Beagle. This was the testimony of both Mr. Haslett and Mr. Beagle, and it was the understanding of Mr. Bunch. Haslett did, in that connection, have the right to recall Bunch from other places of employment if his services were needed at 69-B. Clearly, the employment of Bunch was for the benefit of both Haslett and Beagle. It is clear, also, that Bunch was at all times mentioned in the complaint in Haslett's employment to the extent that he was on Haslett's payroll, and subject to be discharged by Haslett. However, it is not sufficient, in order to render Haslett liable for the negligence of Bunch, that we merely find that Bunch was an employee. We must further find that he was acting in the course and scope of his employment with Haslett. In that connection, you have to keep in mind that Haslett was in the warehouse business, and insofar as the record is concerned, in that business alone. Haslett was interested in the Beagle warehouse under lease to them; they were interested in maintaining a proper inventory and seeing that the merchandise was properly checked, and seeing that no merchandise was removed except under proper authorization. It had no interest whatever in the West Sacramento Storage Company warehouse where the accident occurred. They had no interest in the contract entered into by Beagle

'with the storage company whereby he, Beagle, agreed to clean the warehouse. They had no interest in any equipment used by Mr. Bunch at any time in directing the operation of that equipment, and Mr. Bunch was not assigned by them to operate that equipment.

''There is no dispute as to the facts in this case in relation to the activity being carried on by Bunch at the time of the accident, nor is there any dispute of the relationship between Bunch and Haslett, and Bunch and Beagle. There is no room, gentlemen, for a conflicting inference. It is sufficiently clear that Bunch at the time of the accident was not acting in the course and scope of his employment with the Haslett Warehouse Company, but he was at that time entirely within, and under the control of Mr. Beagle. . . .''

Appellant argues that Bunch had clearly implied authority as a part of his service to Haslett to help Beagle whenever it did not interfere with Bunch's primary duty to Haslett.

Appellant argues also that since Beagle was warehousing rice it was to Haslett's interest to have the West Sacramento Storage Company's warehouse cleaned, because the rice salvaged would eventually be warehoused with Haslett and increase the amount of money earned by Haslett.

Appellant then argues that these facts were sufficient to make it a question of fact for the jury to determine as to whether Bunch was acting within the scope of his employment by Haslett at the time the accident occurred. However, we think it clear, as hereinbefore pointed out, that at the time of the accident Bunch was not acting in the course and scope of his employment by Haslett, but that he was at that time entirely under the control of Beagle.

Appellant contends that an inquiry into the question which employer would be liable for workmen's compensation is helpful in determining which employer is liable for the negligence of Bunch. It is appellant's theory that if Haslett would be liable to Bunch for workmen's compensation if Bunch had been injured, then he would be liable to third parties for the negligence of Bunch. He relies on a statement in *Peters* v. *United Studios Inc.*, 98 Cal.App. 373, 388 [277 P. 156], that the principle for determining liability for workmen's compensation is the same as for determining liability under the doctrine of *respondeat superior*. This rule would be applicable if the inquiry were directed to the question of whether or not the special employer were liable. But in California where both the special employer and the general employer may be liable

for workmen's compensation the rule cannot be applicable in determining the liability of the general employer for the negligence of his employee while acting in the capacity of a special employee. ■ We do not think that the rule as to workmen's compensation was meant to abrogate the general rule that an employer may not be liable for injury to a third person caused by the negligence of his servant if the latter is not in the service of the particular employer but is in the special employment of another at the time the negligent conduct occurred. (Rest., Agency, § 227.) If Bunch were in the special employment of Beagle, the question whether or not Haslett would be liable for workmen's compensation is immaterial in determining the liability of Haslett for the negligence of Bunch.

■ It appears from the undisputed evidence that at the time of the accident here involved Bunch was not acting in the course or scope of his employment with the Haslett Warehouse Company, but that he was at that time acting as a special or loaned employee of Beagle. Haslett had no control over the work that Bunch was doing for Beagle, but had only the right to require Bunch to come back to Warehouse 69-B if he was needed there. In view of the evidence and the authorities hereinbefore cited, we conclude that the trial court did not err in granting a nonsuit as to respondent Haslett Warehouse Company.

We shall next discuss appellant's appeal as to the nonsuit granted in favor of

### Beagle Products Company

The trial court granted a nonsuit as to Beagle Products Company on the theory that appellant, at the time of his injury, was as a matter of law an employee of Beagle Products Company; and hence his sole remedy was with the Industrial Accident Commission.

Appellant concedes that if Beagle Products Company was as a matter of law a special employer of appellant, and all conditions prerequisite to workmen's compensation liabilities were met, this action must fail and the judgment of nonsuit as to Beagle was proper. The reason for this is that under our law both the general employer and the special employer may be liable for workmen's compensation benefits to their injured employee. (*Employers' Liab. Assur. Corp.* v. *Industrial Acc. Com.*, 179 Cal. 432 [177 P. 273]; *Argonaut Ins. Exch.* v. *Industrial Acc. Com.*, 154 Cal.App.2d 703 [316 P.2d 759].)

This remedy, when available, is exclusive. (Cal. Lab. Code, § 3600; *Sasser* v. *Miles & Sons Trucking Service,* 119 Cal.App. 2d 239 [259 P.2d 488].)

█ Appellant cites the recent case of *Argonaut Ins. Exch.* v. *Industrial Acc. Com.,* 154 Cal.App.2d 703, in which the court said at page 708 [316 P.2d 759]:

". . . Larson in his work on Workmen's Compensation Law (vol. 1, p. 710, § 48.00), states that three conditions must be met before a special employer can be held liable for the injury of a special employee. They are: 'When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if (a) the employee has made a contract of hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work.' "

Appellant argues that there is no evidence that there ever existed a contract of hire between appellant and Beagle Products Company. Appellant asserts that the uncontradicted evidence is that appellant at all times worked for Packaged Hulls, Inc.; and as appellant's employer, Packaged Hulls, Inc., and no one else, paid him workmen's compensation benefits. Appellant states that Eldon Beagle was the person who signed appellant into the hospital after his injury, and it was Eldon Beagle who listed appellant's employer as Packaged Hulls, Inc. Appellant then quotes from the testimony of Eldon Beagle as follows: [By Mr. Colley] "Q. When, if ever, you gave Alex Deorosan, the plaintiff, or his foreman Gene Reese, instructions as to what to do, were you functioning as a partner in Beagle Products Company at that moment, or were you acting as vice-president of their employer, Packaged Hulls. A. Well, I would say—— Mr. McGregor: Just a moment, if the court please. I think that is calling for the opinion and conclusion of the witness. He may be able to answer it. The Witness: That would be very hard to answer. The Court: If he couldn't, who can? Mr. McGregor: I think your Honor's right. The Witness: Answer the question? Mr. McGregor: I will withdraw it. The Witness: I will try to answer the question. The only way I could have given orders to Reese was as an officer of Pack Hulls. So I must have been acting as an officer of Pack Hulls. Q. The same thing would apply to Deorosan. A. That's right. Q. In other words, whenever you gave him instructions, you were acting as an officer and manager of Packaged Hulls? A. It had to

be, yes. Come down through channels. Q. In order that there can be no mistake or misunderstanding about it, Deorosan was not an employee of Beagle Products Company. A. No. He was not an employee of Beagle Products Company.''

Respondent Beagle Products Company, in reply, contends that the undisputed facts show that at the time of sustaining his injury the plaintiff and appellant was, as a matter of law, an employee of Beagle Products Company, and hence his sole remedy was with the Industrial Accident Commission. Said respondent argues that appellant did fulfill the three conditions relative to special employment enumerated in *Argonaut Ins. Exch.* v. *Industrial Acc. Com., supra.* Said respondent states: ''. . . Deorosan was hired and put on the payroll of Packaged Hulls, Inc. some considerable time before this accident occurred, and between that time and the time of the accident, the uncontradicted evidence shows that he was often doing work for either Packaged Hulls, Inc., or Beagle Products Company, with full knowledge of the fact that he was subject only to the orders of Eldon Beagle (whether Eldon Beagle was acting as Vice President of Packaged Hulls, Inc., or as a partner in Beagle Products Co.), and by that means entered into an implied contract of hire with Beagle Products Company during the time he was doing any work for the benefit of Beagle Products Company. The second condition was met in that the work being done at the time of this accident was essentially that of the Beagle Products Company, and the third condition was fully met in that Eldon Beagle as the co-partner of Beagle Products Company has the right, and did actually exercise the right of controlling the details of Deorosan's work immediately prior to and at the time the accident occurred. The fact that plaintiff and appellant was carried solely on the payroll of Packaged Hulls, Inc., did not establish that concern to be his sole employer; the fact that Packaged Hulls, Inc., paid the premiums on the compensation insurance does not make the plaintiff and appellant their sole employee, nor does the fact that he was not carried on Beagle Products' payroll prevent the existence of an employment relationship between Deorosan and Beagle Products Company.''

The position of respondent Beagle Products Company is also that the facts show a true case of joint employment and that Deorosan was an employee of both concerns, and therefore his sole remedy against Beagle would be his remedy for workmen's compensation. Beagle relies strongly on *National*

*Automobile etc. Ins. Co.* v. *Industrial Acc. Com.,* 80 Cal.App. 2d 769 [182 P.2d 634]. In the cited case, the petitioner for a writ of review was the insurance carrier for a Cooperative which had been held liable for workmen's compensation. The injured employee served as the manager for the Cooperative and for the Warehouse Company. The cooperative operated a rice drier which adjoined the buildings of the warehouse company. While the employee served both firms, his salary was paid entirely by the Cooperative pursuant to an agreement between it and the Warehouse Company. The arrangement was that in return for the employee's services the Warehouse Company would make its scales and a portion of its premises available to the Cooperative. The employee was injured at a time he was supervising a shipment of rice by the Warehouse Company. The Industrial Accident Commission held the Cooperative solely liable for workmen's compensation. The appellate court held that dual employment existed since in effect each firm paid the employee's salary, and since each firm had the right to control him. The court also said that under the facts of the case joint and not concurrent employment existed so that each employer would be liable for compensation. The court said that where the services of an employee were shared between two employers, where the employee gave all of his time to both employers, and where, if one had terminated the employment, the other would have terminated the employment, joint employment existed. The court said at page 772:

"[H]ere the facts are not in dispute and the commission's implied finding of sole employment by the Cooperative is in reality a conclusion of law from the undisputed facts. This Court is charged with the duty of determining whether or not the commission has exceeded its jurisdiction by making any of its findings contrary to the evidence or without supporting substantial evidence. . . . In cases involving the question whether the claimant was an employee or an independent contractor, the rule has been evolved that this question, which frequently is one of both law and fact, becomes solely one of law when but one inference can be reasonably drawn from all the facts. . . . The only inference that may be properly drawn from the facts of the instant case is the one of dual employment. . . ."

Respondent Beagle contends that the facts of the cited case are on all fours with those of the instant case. We are unable to agree.

In the instant case the fact of joint employment is not as clear. Deorosan testified that he was employed and paid by Packaged Hulls, Inc. He did whatever Eldon Beagle told him to do. However, the facts do not establish that both firms were entitled to his services at all times, that Beagle Products Company could discharge him, or that if it did, the other would also do so; nor do the facts establish that his services were shared other than occasionally. Eldon Beagle testified that appellant was not an employee of Beagle Products Company.

We are here dealing with an appeal from a judgment of nonsuit and must disregard all conflicts in the testimony. In the face of the positive testimony of Eldon Beagle that appellant was not an employee of Beagle Products Company, we do not believe it can be held as a matter of law that he was. We are therefore of the opinion that the issue of appellant's status should have been left to the jury, and that the court erred in granting a nonsuit as to Beagle Products Company.

Appellant also attacks the judgment of nonsuit in favor of

### *West Sacramento Storage Company*

West Sacramento Storage Company was the lessee of the warehouse where the injury to appellant Deorosan occurred. Appellant contends that West Sacramento breached its duty to him by not furnishing him a safe place to work.

Appellant cites section 6400 of the California Labor Code which provides: "Every employer shall furnish employment and a place of employment which are safe for the employees therein."

Appellant also cites section 6304, which reads: " 'Employer' shall have the same meaning as in section 3300 and shall also include every person having direction, management, control, or custody of any employment, place of employment, or any employee."

As hereinbefore set forth, West Sacramento Storage Company entered into a contract with Beagle Products Company to clean its warehouse. Beagle Products brought in the pallets and the forklift truck. West Sacramento Storage Company did not control the manner in which the work was being done. Beagle was clearly an independent contractor as to the work of cleaning the warehouse. To require West Sacramento Storage Company to inspect the safety of the equipment provided by Beagle would mean that no building owner could insulate himself from liability for any defects in the methods

or materials furnished and used by an independent contractor. The owner's duty of informing an invitee of dangerous conditions on the premises does not extend to the contractor's equipment. (*Bosjnak* v. *Superior Sheet Steel Co.*, 145 Ohio St. 538 [62 N.E.2d 305].)

Appellant also contends that West Sacramento Storage Company was an employer of appellant and therefore owed appellant a safe place to work. However, the evidence would not support a finding that West Sacramento Storage Company was an employer of appellant; nor is there any evidence that the warehouse itself was not a safe place in which to work. West Sacramento Storage Company would not be liable for any injuries resulting from alleged defects in equipment furnished by Beagle, nor for any negligence of any employees of any of the other defendants.

Appellant cites the case of *Atherley* v. *MacDonald, Young & Nelson*, 142 Cal.App.2d 575 [298 P.2d 700]. In that case the court affirmed an award for an employee who was injured when he fell down unprotected steps on a construction job. The judgment was against the owner of the building under construction as well as the general contractor. Appellant states that the theory of the case was that defendants were employers of the injured workmen within the meaning of section 6304 of the Labor Code, and therefore owed him a statutory duty to provide him with a safe place to work.

The cited case fails to support the argument of appellant. The facts in the Atherly case are clearly distinguishable from the case at hand. Plaintiff states that the owner of the building which was under construction, Stoneson Development Corporation, was held liable, but he fails to note that said owner was also the builder.

In that case the plaintiff was employed as an electrician by the electrical subcontractor and the accident occurred while he was working on the Emporium building then under construction in the Stonestown shopping district in San Francisco. The building was owned by defendant Stoneson Development Corporation. The "construction manager" for the owner was defendant MacDonald, Young and Nelson, Inc.

In holding that Stoneson Development Company, as well as MacDonald, Young and Nelson, had "direction, management, control" of the stairway, the court noted that Stoneson's contract with MacDonald, etc. made the latter its construction manager, i.e., its agent, and not an independent contractor. The court said at page 583:

". . . Other provisions of the agreement and portions of the evidence could be referred to to demonstrate that Stoneson was the builder as well as the owner, with the MacDonald firm its managerial agent, but enough has been cited to show that both appellants at the time of the accident had 'control' over the stairway either as the builder, owner or supervisor of the work.

"It has already been pointed out that it is an admitted fact that it was the duty of the MacDonald firm to install the wooden treads. This was also the duty of Stoneson. It was a nondelegable duty. (*Snyder* v. *Southern Calif. Edison Co.*, 44 Cal.2d 793 [285 P.2d 912].)"

Since Beagle Products Company was not the agent of West Sacramento Storage Company, it is clear that the Storage Company did not have "direction, management, control" over the platform from which appellant fell.

We believe that the evidence and the law support the following statement of the trial court in granting the motion for a nonsuit: "It was alleged . . . that the company failed and neglected to provide a safe place to work. There is no evidence to that effect. On the contrary, the evidence indicates that the place was safe in every particular. This accident arose either by reason of the negligent operation of the forklift, or by reason of an unsafe condition of an appliance fabricated by Beagle Products Company. The West Sacramento Storage Company did not direct the operation of the equipment, did not fabricate the appliance, and did not at any time adopt the appliance as its appliance."

### Effect of Judgment Against Bunch

As hereinbefore stated, after the court granted the motion of each of the respondents for a nonsuit, the court proceeded to fix the amount of appellant's damages and rendered judgment against Bunch for the sum of $145,295.39. The respondents did not participate in this part of the trial and left the courtroom after the motions for nonsuit were granted.

Appellant's final contention is that "the evidence shows that as a matter of law at the time of the injury to appellant, Bunch was an employee of Beagle and Haslett, and therefore these defendants are bound by the judgment against Bunch." This contention of appellant, in effect, is that if the judgment is reversed as to any of the alleged employers the issues of negligence and damages are res adjudicata at a retrial. In view of the fact that the judgment of nonsuit in

favor of Beagle Products Company must be reversed, we shall discuss this contention.

█ The general rule is stated in Freeman on Judgments, 5th edition, section 489: "Agents and principals, including, of course, masters and servants, do not, as such, have any mutual or successive relationship to rights of property. They are not in privity with each other. Consequently the principal or master is not bound by the judgment obtained in an action by or against the agent or the servant, and vice versa, unless he was a party or privy thereto by having authorized or actually and openly prosecuted or defended the action, or by having been notified and given an opportunity to defend under circumstances requiring him to do so . . ." In *Gadsden* v. *Crafts & Co.*, 175 N.C. 358 [95 S.E. 610, L.R.A. 1918E 226], plaintiff sued A, B and C. Plaintiff alleged A was the servant of B and C. A did not appear or plead, and judgment by default was taken against A. B and C in their answers alleged that A was not a servant but an independent contractor and that consequently neither of them was liable to plaintiff. The trial court held or intimated that A was an independent contractor and consequently that B and C were not liable to the plaintiff. Plaintiff instead of trying the issue submitted to a nonsuit, and judgment was entered in favor of B and C. Plaintiff then appealed and the judgment in favor of B and C was reversed. After plaintiff submitted to a nonsuit the trial proceeded against A for the purpose of assessing damages which were found to be $1250. B and C took no part in the trial of the case on the issue of damages after the judgment of nonsuit was entered. After the nonsuit was reversed and the matter remanded, a new trial was had at which a verdict in favor of plaintiff was rendered. At the retrial the court held that as a matter of law the amount of damages as determined against A was conclusive against B and C. On appeal the reviewing court held that a default judgment against a negligent tortfeasor is not conclusive or binding as to the employer as to the amount of damages when the nonsuit is reversed and the case sent back for trial on the question of liability.

█ We have found no decision dealing with the precise question, but are satisfied that the rule stated in the cited case is sound. We believe that it would be unjust to hold that respondents, who by the granting of a nonsuit were dismissed from the action and did not participate in the trial upon

the question of damages, would be compelled to abide by the judgment against the alleged employee. The cited case would appear to support the rule that the amount of damages is not res adjudicata in a situation such as that presented in the instant case, and we believe the same rule should be applicable to the other issues in the case so far as respondents are concerned. We therefore hold that upon a retrial respondents should be permitted to relitigate the issues of liability and damages.

### Conclusion

The judgment granting a nonsuit as to respondent Beagle Products Company is reversed. The judgments of nonsuit as to respondents Haslett Warehouse Company and West Sacramento Storage Company are affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Petitions for a rehearing were denied December 26, 1958, and appellant's petition for a hearing by the Supreme Court was denied January 21, 1959. Carter, J., was of the opinion that the petition should be granted.